153 N.J. Super. 597 (1977)
380 A.2d 1137
RUTH DANOW, ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF ROBERT DANOW, DECEASED, PLAINTIFFS,
v.
PENN CENTRAL TRANSPORTATION COMPANY AND ITS TRUSTEES, RICHARD C. SINANSKY, QUIGLEY COMPANY, COUNTY OF MIDDLESEX, STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION AND THE PUBLIC UTILITIES COMMISSION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 24, 1977.
*598 Messrs. Heilbrunn, Finkelstein, Heilbrunn, Garruto and Galex, attorneys for plaintiffs (Mr. Robert E. Goldstein on the brief).
Messrs. Strong & Gavarny, attorneys for defendant Penn Central Transportation.
Mr. Philip M. Lustbader, attorney for defendant Richard C. Sinansky.
Mr. Robert G. Hampson, attorney for defendant Quigley Company.
Mr. Richard A. Amdur, attorney for defendant County of Middlesex.
Mr. William F. Hyland, Attorney General of New Jersey, attorney for defendants State of New Jersey Department *599 of Transportation and Public Utilities Commission (Mr. George W. Fisher, Deputy Attorney General, on the brief).
FURMAN, J.S.C.
The scope of state liability under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., is at issue on the state's motion for summary judgment, R. 4:67-5, in a tort action arising out of a railroad grade crossing accident in the early morning hours of September 26, 1975.
Plaintiff's decedent was a passenger in a motor vehicle traveling westbound on Bordentown Avenue, a Middlesex County road, which was struck by a Penn Central freight train at a grade crossing in Sayreville. Penn Central, Middlesex County, the State Department of Transportation and the State Public Utilities Commission are joined as defendants, along with the Quigley Company, the owner of the grade crossing, and Sinansky, the driver of the motor vehicle.
According to the pretrial discovery version of the facts most favorable to plaintiff, one crossbuck was defective, visibility approaching the grade crossing in a westerly direction was restricted, no advance warning signs were installed on Bordentown Avenue, no flashing lights or bells were in operation, this accident was the 12th at the grade crossing since 1959, all reported to the Public Utilities Commission or to the Department of Transportation, which succeeded to regulatory authority over grade crossings in 1972 (N.J.S.A. 27:1A-62), state representatives made regular inspections of the grade crossing, a report of a dangerous condition because of poor visibility was filed by a state inspector in 1974, and no enforcement of grade crossing safety regulations had been undertaken by any state agency prior to this accident.
The Tort Claims Act circumscribes state tort liability, whatever the decisional law preceding it. Cf. Willis v. Dept. of Cons. & Ec. Dev., 55 N.J. 534 (1970). Governmental *600 tort immunity is the rule except as otherwise set forth in the act. N.J.S.A. 59:2-1; English v. Newark Housing Auth., 138 N.J. Super. 425, 428, 429 (App. Div. 1976).
Plaintiff urges the applicability of N.J.S.A. 59:4-2, which provides:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under Section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
Admittedly, the grade crossing in question was not owned or leased by the State, nor did the State hold an easement or right of way across it. Plaintiff relies, nevertheless, on the definition of public property in N.J.S.A. 59:4-1(c):
"Public property" means real or personal property owned or controlled by the public entity, but does not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity.
According to plaintiff, the State controlled this grade crossing, although concededly without possessory control, because of its authority to approve and to enforce grade crossing safety standards. N.J.S.A. 48:12-54, 55, 56.
The concept of control of property not owned or occupied by a public entity as a basis for its tort liability is *601 not discussed either in the official comments accompanying the act itself or in the legislative history. See Report of the Attorney General's Task Force on Sovereign Immunity (1972). Exceptions to the common law rule of immunity should be strictly construed. As urged by plaintiff, state liability would extend, assuming actual or constructive notice, to dangerous conditions involving reasonably foreseeable risks of injury in, e.g., factories (N.J.S.A. 34:6-1 et seq.), mines (N.J.S.A. 34:6-98.1 et seq.) and tenement houses (N.J.S.A. 55:13A-1 et seq.), all of which are subject to state regulatory authority. Arguably, according to this construction, the State might be held liable in damages for injury sustained as a proximate result of a dangerous condition existing for some period of time on private property subject to regulation, without actual notice through an inspection or otherwise.
The California Tort Claims Act, Cal. Gov't Code § 810 et seq., enacted in 1963, was the model for the Tort Claims Act. Comment accompanying N.J.S.A. 59:2-1; Markey v. Skog, 129 N.J. Super. 192, 205 (Law Div. 1974). Its § 830 (c) has identical language defining "public property." The application of that section by the California courts is therefore of significance in the construction of the word "controlled" in N.J.S.A. 59:4-1(c). Zwirn v. Hudson Cty., 137 N.J. Super. 99, 104 (Law Div. 1975); Dambro v. Union Cty. Pk. Comm'n, 130 N.J. Super. 450, 456 (Law Div. 1974).
No reported California case is squarely in point. Broad language in Holmes v. City of Oakland, 260 Cal. App. 378, 67 Cal. Rptr. 197 (Ct. App. 1968), suggests that the duty to inspect vests control in a public entity, but the issue was the narrower one whether the city, which owned the fee, had retained control of a railroad right of way because of its reservation of the right of inspection. The Court of Appeals determined that it had. Similarly in Low v. City of Sacramento, 7 Cal. App.3d 826, 87 Cal. Rptr. 173 (Ct. App. 1970), the county, which owned the fee and had undertaken *602 maintenance of a parking strip easement, was held not to have surrendered control to the city, which owned the easement.
These cases do not support a construction of N.J.S.A. 59:4-1(c) that control should be equated with regulatory jurisdiction, other than in combination with ownership of the fee.
Nor is Bergen v. Koppenal, 52 N.J. 478 (1968), which is relied on by plaintiff, a direct authority. In Bergen, defendant municipality had neither ownership nor possessory control of an overhead traffic light on a state highway or of the highway itself. A municipal police officer observed that the light had broken loose and was misdirected. Two other lights governed traffic at the intersection. Over two hours after the police officer's radio report to headquarters an accident occurred when a driver drove into the intersection with the misdirected light green and the other lights red. In reversing a dismissal in favor of the municipality the Supreme Court stated:
The question is whether for tort purposes the Township was nonetheless under a duty to take over traffic control when its officer learned of the situation we have described ... [A] duty may be found if a police officer learns of an emergent road condition which is likely not to be observed by a motorist and which holds an unusual risk of injury. [at 480]
Bergen is distinguishable because the municipality had coordinate traffic enforcement responsibility on a State highway within the municipality. N.J.S.A. 39:4-80, 39:5-1. See, e.g., Bridgeton v. Zellers, 100 N.J.L. 33, 35 (Sup. Ct. 1924). By contrast the Department of Transportation enforces grade crossing safety regulations through orders to compel compliance (N.J.S.A. 48:12-55), not through action on its own to remedy or warn against dangerous conditions. State enforcement of regulations governing factories (N.J.S.A. 34:6-22), mines (N.J.S.A. 34:6-98.9(a)) and tenement houses (N.J.S.A. 55:13A-16, 17) is parallel.
*603 Bergen preceded the Tort Claims Act. It should not be rationalized as equating control in N.J.S.A. 59:4-1(c) with police responsibility on the scene. Rather it is in a line of authority that a municipality may be liable in tort for failure of its police officer to protect the public against an obvious danger of injury by means reasonably available to him in the exercise of a ministerial function. Czyzewski v. Schwartz, 110 N.J. Super. 255 (App. Div. 1970); Logan v. No. Brunswick Tp., 129 N.J. Super. 105 (App. Div. 1974); Wuethrich v. Delia, 134 N.J. Super. 400 (Law Div. 1975); N.J.S.A. 59:2-3(d).
The word "controlled" in N.J.S.A. 59:4-1(c) should not be construed as extending beyond possessory control. The broad construction urged by plaintiff would enlarge governmental tort liability, without authority in decisional law or legislative history. It would import a concept of control novel to real property law. That construction is rejected.
Plaintiff does not press other theories of tort liability against the State. Several specific sections of the Tort Claims Act foreclose recovery for failure to make inspections or for negligent inspections (N.J.S.A. 59:2-6), for failure to provide traffic signals, signs, markings or other similar devices (N.J.S.A. 59:4-5), for administrative action or inaction of a judicial nature (N.J.S.A. 59:2-3(b)), for failure to enforce any law (N.J.S.A. 59:2-4) and for failure to suspend or revoke any license or approval (N.J.S.A. 59:2-5).
Summary judgment on the basis of immunity is granted in favor of the State.