207 N.J. Super. 100 (1986)
504 A.2d 29
GEORGE E. BALL, ADMINISTRATOR, AND ADMINISTRATOR AD PROSEQUENDUM OF ESTATE OF MARK BALL, PLAINTIFF-APPELLANT,
v.
NEW JERSEY BELL TELEPHONE COMPANY, TOWNSHIP OF BERKELEY, COUNTY OF OCEAN AND STATE OF NEW JERSEY, DEPARTMENT OF LAW AND PUBLIC SAFETY, DEFENDANTS-RESPONDENTS, AND REID CONSTRUCTION COMPANY AND A.B.C. CORPORATION (A FICTITIOUS NAME, ACTUAL NAME BEING UNKNOWN), DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 20, 1985.
Decided January 9, 1986.
*102 Before Judges BRODY, GAYNOR and BAIME.
Noel S. Tonneman argued the cause for appellant (Auerbach, Rudnick, Waldman, Ford, Addonizio & Pappa, attorneys; *103 Martin M. Rudnick, of counsel; Noel S. Tonneman, on the brief).
George N. Arvanitis argued the cause for respondent New Jersey Bell Telephone Company (Carton, Nary, Witt & Arvanitis, attorneys; George N. Arvanitis, of counsel; Jamie S. Perri, on the brief).
Mark M. Cieslewicz argued the cause for respondent Township of Berkeley (Bernadette A. Duncan, attorney; Mark M. Cieslewicz, on the brief).
Peter J. Van Dyke argued the cause for defendant County of Ocean (Gelzer, Kelaher, Shea & Novy, attorneys; Thomas F. Kelaher, of counsel; Peter J. Van Dyke, on the brief).
Madeline W. Mansier, Deputy Attorney General, argued the cause for defendant State of New Jersey (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Deputy Attorney General, of counsel; Madeline Mansier, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
Plaintiff, as general administrator and administrator ad prosequendum, instituted this action to recover damages arising out of the death of his son in a tragic automobile accident. Named as defendants were the State of New Jersey, Berkeley Township, Ocean County and New Jersey Bell Telephone Co. (Bell). In his complaint, plaintiff alleged that the decedent was killed when his automobile struck a telephone pole which was located along the border of the Route 37 eastbound exit ramp. Plaintiff claimed that the decedent died as a result of the negligence of defendants in placing and maintaining a telephone pole on the traffic side of a guardrail. The principal thrust of the allegations contained in the complaint was that Bell's placement of the telephone pole on the wrong side of the guardrail created a dangerous condition which the State, Ocean County and Berkeley Township failed to remedy.
*104 Prior to trial, all defendants filed motions for summary judgment. Both Ocean County and Berkeley Township predicated their motions upon the ground that the accident occurred on property owned and controlled by the State. The State argued that the telephone pole had been placed along the shoulder of the roadway in accordance with a permit it had granted to Bell pursuant to N.J.S.A. 48:17-8 and that it was, thus, protected by the immunity accorded public entities with respect to their licensing activities under N.J.S.A. 59:2-5. Bell contended that it was under no obligation to guard motorists against extraordinary exigencies created when a vehicle leaves the travelled portion of a highway out of control and that the accident was not proximately caused by its negligence. Following argument, the trial judge granted summary judgment in favor of the State, Ocean County and Berkeley Township. Bell's motion was denied. After a lengthy trial, the jury returned a verdict of no cause for action in favor of Bell. In this appeal, plaintiff contends that summary judgment was improperly granted to the public entities and that the judge committed reversible error at trial.
The salient facts can be briefly stated. In the early morning hours of January 11, 1981 the decedent was killed in a one-vehicle accident on the Route 37 exit ramp. There were no witnesses. Decedent's dark green Karman Ghia was found off the left side of the roadway. The front of the vehicle was adjacent to a telephone pole which it had apparently struck. Most of the damage to the automobile was sustained by the left front and side portions. The left front tire was flat.
The telephone pole was located approximately three feet behind the edge of a nine-inch white cement curbline. A metal guardrail was located approximately three feet behind the telephone pole. Although the ground was frozen, the grassy area between the curb and the guardrail disclosed markings which could have been made by the decedent's vehicle. Fresh "tire scuff marks" were found on the cement curbing approximately *105 40 to 60 feet north of the resting position of the automobile.
Although it was extremely cold on the morning of the accident, there was no snow or ice on the road. The investigating police officers did not find any skid marks or debris on the roadway. Conflicting evidence was presented with respect to whether the decedent's vehicle had struck the guardrail before striking the telephone pole. One officer could not recall finding any evidence of such contact, while another testified that the guardrail appeared "scraped and bent." Plaintiff stated that he examined the guardrail shortly after the accident and discovered traces of green paint. This testimony was corroborated by a close personal friend of plaintiff, a former member of the State Police, who visited the scene later in the morning. He testified that he observed green paint scrapings along the guardrail.
At trial, plaintiff presented Dr. Kenneth Heathington as an expert witness. According to his testimony, the purpose of a metal guardrail is to "prevent rapid deceleration" of a vehicle striking it by softening the impact and guiding it along an unobstructed path. For this reason, it is a cardinal rule of safety that no immovable object be placed or permitted "on the traffic side of a guardrail." Although this safety principle was said to be self-evident, Dr. Heathington noted that it was expressly set forth in standards promulgated by the American Association of State Highway Officials. The witness testified that placement of the telephone pole in front of the guardrail constituted the "grossest" form of negligence and that it was "inconceivable" that the State would have approved that practice. He concluded that the effect of Bell's dereliction in this case was to guide the decedent's vehicle directly into the telephone pole. Had the pole been placed behind the guardrail, there would have been minimal injury to the decedent and minimal damage to the decedent's automobile.
*106 Dr. Heathington examined the 1956 design and construction plans for the Route 37 exit ramp. "[C]onspicuously absent" was any reference to the telephone pole. Specifically, the plans did not call for any telephone pole along the side of the roadway. The witness characterized this omission as "very unusual." On cross-examination the witness speculated that either Bell had never requested a permit for placement of the telephone pole in that location or the State had denied its application.
William Stopple, a retired Bell employee, testified that the pole was originally placed in 1958. Although N.J.S.A. 48:17-8 requires that a permit for placement of a utility pole be obtained from the State, the witness was unable to find one in this case. Stopple could not determine whether Bell had ever applied for a permit and, if it did, whether its application was granted. He observed, however, that all telephone poles are placed by Bell only after permits have been issued by the State. The witness noted that while the State had the final authority in determining the exact location of telephone poles along its highways, substantial deference was generally accorded to the utility's requests.
Stopple further testified that Bell inspects all telephone poles once every six years. Although he acknowledged that placement of telephone poles on the traffic side of a guardrail is not "preferable," the witness was unaware of any directive from either the State or Bell ordering relocation. He stated that Bell's inspectors are not instructed to report instances where poles are found located in front of the guardrails. Apparently, such inspections are generally limited to determining the condition of the pole. In any event, Bell's records disclosed that telephone poles on the side of the Route 37 exit ramp had last been inspected in 1977.

I
We first consider plaintiff's argument that the trial judge erroneously granted summary judgment in favor of Ocean *107 County and Berkeley Township. Plaintiff concedes, as he must, that the exit ramp on which the accident occurred was owned and controlled by the State. Nevertheless, he contends that both Ocean County and Berkeley Township were fully cognizant of the dangerous condition of the road and that their failure to warn the appropriate State officials or take other remedial steps was palpably unreasonable and thereby subjected them to liability pursuant to N.J.S.A. 59:4-2.
We find no merit in this argument. N.J.S.A. 59:4-2 provides as follows:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition;
or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
By its very terms, liability under this section is limited to injuries proximately caused by a dangerous condition on the property owned by the public entity. McGowan v. Eatontown, 151 N.J. Super. 440, 446 (App.Div. 1977); Danow v. Penn Central Transportation Co., 153 N.J. Super. 597, 600-601 (Law Div. 1977); N.J.S.A. 59:4-1(c). Nothing in the legislative history suggests that a public entity is liable for injuries sustained by virtue of a dangerous condition existing on the property of another. See Report of the Attorney General's Task Force on Sovereign Immunity (May, 1972). Extension of governmental tort liability in the manner urged by plaintiff here would clearly subvert the plainly expressed legislative mandate which is to immunize public bodies except where there is a statutory declaration *108 to the contrary. N.J.S.A. 59:2-1. See also Malloy v. State, 76 N.J. 515, 519 (1978).

II
More troublesome is plaintiff's contention that the trial judge erred in granting the State's motion for summary judgment. Again, plaintiff's argument is predicated upon N.J.S.A. 59:4-2. More specifically, he claims that the decedent's death was caused by a dangerous condition created and maintained by the State on its own property. The trial judge did not directly address that question. Rather, he determined that the State was immune from liability because issuance of the permit for placement of the telephone pole constituted an integral part of its licensing activities and was, thus, protected by N.J.S.A. 59:2-5. That section states:
A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.
We are convinced that the trial judge erred. Initially, we note that a public entity's claim of immunity under N.J.S.A. 59:2-5, particularly in view of N.J.S.A. 59:4-2, is a matter of affirmative defense "as to which it bears not only the burden of pleading but also the burden of proof." Ellison v. South Amboy Housing Auth., 162 N.J. Super. 347, 351 (App.Div. 1978). See also Kolitch v. Lindedahl, 100 N.J. 485, 497 (1985). To succeed on a motion for summary judgment, the entity must "come forward with proof of a nature and character [that] would exclude any genuine dispute" of fact. Ellison v. South Amboy Housing Auth., supra 162 N.J. Super. at 351. A fair reading of the license immunity section compels the conclusion that a critical fact which the State must establish in order to carry this burden is that it had either granted or denied a permit.
The evidence submitted by the State in support of its summary judgment motion patently did not satisfy this requirement. *109 The proof consisted exclusively of the provisions of N.J.S.A. 48:17-8 which require a utility to obtain approval of a public entity for construction or placement of any telephone poles, wires or conduits "in, upon, along, over or under any public street...." Nothing was presented to indicate that Bell ever applied for or received the necessary permit. The State offered no proofs to establish that the telephone pole was placed along the border of the roadway pursuant to its approval. The sparse record on the motion for summary judgment is barren of anything to support this thesis other than the naked assertion of the State that it was immune pursuant to N.J.S.A. 59:2-5.
Of course, we do not mean to suggest that in the absence of satisfactory documentary evidence the State would necessarily be foreclosed from establishing the critical fact upon which it hinges its claim of immunity. Here, however, substantial factual questions were presented which could not fairly be resolved through the vehicle of summary judgment. We note that the original design plans did not provide for a telephone pole along the side of the exit ramp. Obviously, the trier of fact is not obliged to accept as true the unsupported allegation of the State that a permit was granted merely because one was required by statute.
We are convinced that the State's motion was incorrectly granted for another reason. The record is largely uninformative with regard to when the telephone pole and the guardrail were placed in their positions. We have carefully examined the papers and reports accompanying the State's motion and plaintiff's response. Whatever evidence exists with respect to the chronology of events suggests that the telephone pole was already in place when the guardrail was erected. If so, it is abundantly clear that the State created the dangerous condition by placing the guardrail on the wrong side of the pole and the immunity conferred by N.J.S.A. 59:2-5 is not implicated.
This brings us to what we perceive to be the final and most significant flaw in the State's argument. Central to the State's defense is the thesis that N.J.S.A. 59:2-5 confers absolute *110 tort immunity where a public entity grants a license to create a dangerous condition on it property. We reject that argument.
In our view, the immunity accorded by the statute was intended to protect public bodies in the performance of their discretionary and ministerial licensing functions. "This immunity is necessitated by the almost unlimited exposure to which public entities would otherwise be subjected if they were liable for the numerous occasions on which they issue, deny, suspend or revoke permits and licenses". Report of the Attorney General's Task Force on Sovereign Immunity, supra, Comment to N.J.S.A. 59:2-5. We recognize that the "immunity [thus] granted is pervasive and applies to all phases of the licensing function...." Malloy v. State, supra 76 N.J. at 520. Our Supreme Court has observed in this context:
Licensing activity is a vital exercise of governmental authority. In this State there are literally millions of licenses, certificates, permits and the like applied for, issued, renewed or denied. It is inevitable that with such a staggering volume of activity, mistakes, both judgmental and ministerial, will be made. The purpose of the immunity is to protect the licensing function and permit it to operate free from possible harassment and the threat of tort liability. [Id. at 521].
Toward that end, we have consistently applied the statute to protect public entities against tort liability in the exercise of their licensing function. See, e.g., Railroad Roofing, etc. Co. v. Financial Fire, etc. Co., 171 N.J. Super. 375, 388-389 (App.Div. 1979), rev'd on other grounds 85 N.J. 384 (1981); Vacirca v. Consolidated Rail Corp., 192 N.J. Super. 412, 417 (Law Div. 1983).
It is far different to suggest, however, that the State can clothe itself with immunity by merely issuing a permit authorizing another to create a dangerous condition on its property which it thereafter maintains without remedy. In such a case, the licensing authority of the State is in no sense implicated. Stated somewhat differently, the culpable act is not the issuance of a permit. Rather, it is the creation and maintenance of a dangerous condition upon the property and the "palpably unreasonable" conduct of the public entity in failing to remedy *111 it. We thus conclude that the Legislature did not intend to confer immunity on a public body under N.J.S.A. 59:2-5 for injuries sustained by virtue of a dangerous condition it creates and maintains on its property.[1]See Hill v. People ex rel. Dep't of Transportation, 91 Cal. App.3d 426, 154 Cal. Rptr. 142, 146 (App.Ct. 1979). Accordingly, we reverse the order granting the State's motion for summary judgment.

III
We next turn to plaintiff's argument that the judge committed reversible error during the course of the trial and that the judgment in favor of Bell must be vacated. Although phrased in a variety of ways, the essential thrust of plaintiff's contention is that the judge erred in excluding evidence of various safety standards promulgated by the Department of Transportation and in refusing to charge the jury concerning the probative effect of Bell's violation of those regulations. Plaintiff argues that Bell's failure to abide by the regulations constituted evidence of negligence and the jury should have been instructed accordingly.
*112 Although plaintiff sought to introduce several regulations, the only relevant one here is N.J.A.C. 16:25-5.4(b)(3) which states that telephone "[p]oles will always be located behind guard rail[s]...." Plaintiff contends that the regulation creates or at least codifies a standard of conduct and that Bell's deviation was proof of negligence. See, e.g., Horbal v. McNeil, 66 N.J. 99, 103 (1974); Michaels v. Brookchester, Inc., 26 N.J. 379, 386 (1958); April v. Collings Lakes Ambulance Ass'n, 109 N.J. Super. 392, 401 (App.Div. 1970); Phillips v. Scrimente, 66 N.J. Super. 157, 163 (App.Div. 1961). We disagree.
While we recognize the familiar rule that deviation from a statutory or regulatory standard of conduct, though not conclusive of negligence, is nevertheless a relevant circumstance to be considered by the trier of fact in assessing tort liability, we perceive several fatal flaws in plaintiff's argument. Initially, we note that while the utility is obliged to design facilities to be installed within the highway rights of way, N.J.A.C. 16:25-2.2(a), the Department of Transportation is primarily responsible for insuring that appropriate safety standards are satisfied. N.J.A.C. 16:25-1.2(b); N.J.A.C. 16:25-1.4; N.J.A.C. 16:25-2.2(b). The regulations promulgated by the Department were designed to guide its own personnel, not others, in performing that responsibility.
We also note that the regulation was adopted by the Department in 1973, some 16 years after the telephone pole had been placed in the ground. The obvious question, therefore, is whether a party's failure to abide by a regulatory standard not in effect at the time of its conduct constitutes proof of negligence. We confronted the identical issue in Ellis v. Caprice, 96 N.J. Super. 539 (App.Div. 1967), certif. den. 50 N.J. 409 (1967). There, plaintiff sought to introduce into evidence several sections of the Tenement House Act which, in essence, codified certain safety standards relating to the construction of air shafts. Plaintiff contended that the defendant's failure to adhere to those standards constituted proof of negligence. The *113 trial judge excluded the proferred evidence on the basis that the statutory provisions were enacted long after construction of the shaft was completed. On appeal, we rejected the argument that deviation from a statute enacted after the actionable event constitutes proof of negligence. We concluded that the trial judge did not err in excluding the statute and in refusing to instruct the jury with respect to the defendant's failure to comply with its prescription. Id. at 553-554. But see Hassan v. Stafford, 472 F.2d 88, 94 (3 Cir.1973); Curtis v. District of Columbia, 363 F.2d 973, 975 (D.C. Cir.1966).
We are convinced that the same principles apply with equal force here. It is undisputed that the telephone pole was in place long before the regulation was promulgated by the Department. We perceive no intent to apply the regulation retroactively. Clearly, N.J.A.C. 16:25-5.4(b)(3) was adopted to guide the Department's personnel in determining the appropriate location of telephone poles. Under these circumstances, it can hardly be said that Bell's failure to comply with a regulatory standard that was not in existence at the time the telephone pole was placed constitutes proof of negligence. We thus conclude that the trial judge did not err in refusing to admit the regulation and in denying plaintiff's request to charge.
In any event, even assuming error, we are thoroughly convinced from our careful examination of the trial record that plaintiff was not thereby prejudiced. Substantial evidence was presented at trial disclosing the universally accepted standard that telephone poles are not to be placed on the traffic side of a guardrail. Plaintiff presented uncontradicted evidence to that effect. Significantly, counsel for defendant Bell conceded that fact in both his opening and closing statements. Bell's defense was that the State alone was responsible for placing the pole in front of the guardrail, not that there was no evidence of negligence or that it was unaware of the safety standard recognized in the industry. Under these circumstances, we perceive no possible prejudice to plaintiff arising out of the trial judge's decision.

*114 IV
Lastly, we reject plaintiff's claim that the compound nature of the jury interrogatory regarding negligence and proximate cause constituted plain error. While we deem it preferable that where negligence and proximate cause are both in issue these questions be separately answered by the fact-finder, see, e.g., Guzzi v. J.C.P. & L., 12 N.J. 251, 259-260 (1953); Morie v. N.J. Mfts. Indem. Ins. Co., 48 N.J. Super. 70, 80 (App.Div. 1957), we hold that the alleged error did not possess "a clear capacity to bring about an unjust result." State v. Macon, 57 N.J. 325, 337 (1971). See also Goss v. Allen, 70 N.J. 442, 448 n. 2 (1976); Melendez v. Rodde, 176 N.J. Super. 283, 286 (App.Div. 1980).

V
To recapitulate, we affirm the orders granting summary judgment in favor of Ocean County and Berkeley Township. We also affirm the judgment in favor of Bell. However, we are constrained to reverse the order granting the State's motion for summary judgment. The judgment is thus reversed and the matter is remanded for trial. We do not retain jurisdiction.
NOTES
[1] We are aware of the fact that in a somewhat related context, it has been held that perpetuation of a known design defect does not constitute maintenance of a dangerous condition sufficient to remove the claim from the immunity provided by N.J.S.A. 59:4-6. See, e.g., Ellison v. South Amboy Housing Auth., supra, 162 N.J. Super. at 353-354; McGowan v. Eatontown, supra, 151 N.J. Super. at 449. Cf. Costa v. Josey, 83 N.J. 49, 53-54 n. 1 (1980). We recognize that where the plan or design of an improvement to public property has been approved by a public employee exercising discretion or by an official body, the State is immune from liability for a dangerous condition on that public property. See Rodgers v. Passaic Housing Auth., 139 N.J. Super. 569 (App.Div. 1976), certif. den. 71 N.J. 337 (1976). Compare N.J.S.A. 59:2-7 with N.J.S.A. 59:2-5. Our holding here is not in any sense inconsistent with this principle. We note that the State did not initially assert that it was immune from tort liability on the basis of plan or design immunity. This issue was first raised on appeal. In any event, no evidence was presented that the location of the telephone pole was the subject of prior governmental approval. Ellison v. South Amboy Housing Auth., supra 162 N.J. Super. at 351. As we have noted, the plans and designs for construction of the exit ramp did not provide for the placement of telephone poles on the side of the roadway.