740 A.2d 1117 (1999)
326 N.J. Super. 194
Colleen WEISER, Administrator ad Prosequendum of the Estate of Charles Weiser, Plaintiff-Appellant,
v.
COUNTY OF OCEAN and the State of New Jersey, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted October 27, 1999.
Decided November 30, 1999.
*1118 George F. Murphy, Jr., Forked River, for plaintiff-appellant (Dasti, Murphy, Wellerson & McGuckin, attorneys; Mr. Murphy, on the brief).
Kevin B. Riordan, Toms River, for defendant-respondent County of Ocean (Berry, Kagan, Sahradnik, Kotzas & Riordan, attorneys; Mr. Riordan, on the brief).
Before Judges BROCHIN, EICHEN, and WECKER.
The opinion of the court was delivered by BROCHIN, J.A.D.
This is an appeal by plaintiff Colleen Weiser, administratrix ad prosequendum of the estate of Charles Weiser, deceased, from an order for summary judgment which dismissed her complaint against defendant County of Ocean. For the following reasons, we affirm.
Charles Weiser was killed as the result of a two-car automobile accident. Ms. Weiser settled her claim against the driver of the second vehicle, Ms. Joey Amanda Staggard, and then sued the State of New Jersey and the County of Ocean. Plaintiff alleged that a proximate cause of the fatal accident was their "causing to exist and *1119 maintaining a dangerous condition of the highway, without adequate warnings, which constituted a trap and which caused... Joey Amanda Staggard, to turn her motor vehicle into the path of" decedent's vehicle. The State consented to pay the arbitration award entered against it. The subject of this appeal is Ms. Weiser's claim against the County of Ocean.
The accident occurred near an intersection between State highway, Route 72 and Ocean County highway, Route 554. The intersection is a "Y-intersection." West of the intersection, State Route 72 the leg of the "Y," running approximately east and west. At the point of intersection, State Route 72 turns slightly to the south to form one branch of the "Y" and County Route 554 turns slightly to the north to form the other branch. The angle of separation between the two roads at the point where they diverge is very slight.
Immediately before the collision, Mr. Weiser's car was traveling westbound on Route 72, just west of the intersection. Ms. Staggard's vehicle was traveling eastbound on Route 72, also west of the intersection. There was no turning lane on Route 72 and there were no traffic control signals or warning signs at the intersection of the two highways. Because of the angle of divergence of the two roads, a vehicle traveling eastbound on Route 72 whose driver wanted to turn onto Route 554 and to continue eastbound, like Ms. Staggard, would tend to enter Route 554 by cutting across Route 72, driving eastbound for some distance in the westbound lane of Route 72.
That is what Ms. Staggard did. While she was cutting across Route 72, driving eastbound in its westbound lane, Mr. Weiser was driving his car westbound in the westbound lane of Route 72, just west of the intersection. Ms. Staggard's eastbound travel in the westbound lane of Route 72 brought her vehicle to a head-on collision with Mr. Weiser's vehicle. The premise of plaintiff's claim against the County of Ocean is that the condition of the intersection which tended to cause Ms. Staggard's eastbound vehicle to drive in the westbound lane of Route 72 was a "dangerous condition" of property within the meaning of N.J.S.A. 59:4-1 and -2.
The County moved for summary judgment. It argued that N.J.S.A. 59:4-1 and -2 are not applicable because the accident happened on Route 72, not on property "owned or controlled" by the County. The County also contended that it is immunized from liability by N.J.S.A. 59:2-3(c) and, in addition, by N.J.S.A. 59:2-3(d). The summary judgment court agreed with all three of defendant's arguments. We concur with defendant's first argument, that there is no basis for liability because N.J.S.A. 59:4-1 and -2 are inapplicable, and we therefore do not need to consider its arguments based on the immunities conferred by N.J.S.A. 59:2-3(c) and -3(d).
To recover under N.J.S.A. 59:4-2, a plaintiff must show either that his injury was caused by "a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment [which] created the dangerous condition," N.J.S.A. 59:4-2(a), or that the public entity "had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition," N.J.S.A. 59:4-2(b). Plaintiff's brief alleges both bases for the County's liability in the following terms:
1. The County created the dangerous condition of property by paving and extending the paved width of Route 554 into highway 70 [sic] as a trap for oncoming motorists; and
2. Having constructive and actual notice of the dangerous condition of property a sufficient time before the fatal death [sic] of decedent to have protected against the fatal accident.
The dangerous condition which was a proximate cause of Mr. Weiser's fatal accident was the angle of intersection of Routes 72 and 554 and the absence of a *1120 turning lane and markings on Route 72 to prevent vehicles from traveling into traffic heading in the opposite direction. There is no support or explanation in the record for plaintiff's assertion that "paving" the County road created the danger. If the County is liable, its liability rests either on its having created the dangerous intersection or, after notice, having failed to protect against it.
The record dose not support plaintiff's allegation that the State highway, Route 72, existed in its current location before the County road was in place. The only evidence submitted to us on that issue is contained in plaintiff's expert's report. According to that report, the State built Route 72 after County Route 554 was already in place. Since the State highway was built after the County road, the State created the intersection. The angle at which the two highways diverge could not have been the result of negligence of a County employee. The County is therefore not liable under N.J.S.A. 59:4-2a for having created the angle of intersection.
A photograph of the intersection in a newspaper article which Ms. Weiser has included in her brief shows that striping was painted on the State highway after the accident to channel vehicles into a right-angled turn onto Route 554. Arguably, this implies that the absence of a turning lane or appropriate striping on the State highway created a "dangerous condition" which was a proximate cause of the accident.
The "dangerous condition" which is the predicate for liability of a public entity under N.J.S.A. 59:4-2 must be a dangerous condition inherent in property "owned or controlled" by the public entity. N.J.S.A. 59:4-1(a) defines "dangerous condition" in the following terms:
"Dangerous condition" means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.
N.J.S.A. 59:4-1(c) defines "Public Property," i.e., property of the culpable public entity, as "real or personal property owned or controlled by the public entity...."
By force of the first definition, "dangerous condition" of property is limited to a dangerous condition on the property whose use by the injured plaintiff is a proximate cause of his injury. The danger must be inherent in the property used by the injured plaintiff. This proposition is illustrated by Ross v. Moore, 221 N.J.Super. 1, 533 A.2d 398 (App.Div.1987). In that case, the injured plaintiff argued that an inadequate number of parking spaces on public school property was a dangerous condition of that property because it led students to park in a shopping center parking lot, thereby causing them to cross a street at an unguarded intersection and exposing them to the resultant dangers. Id. at 4, 533 A.2d 398. We rejected the argument because "no danger inhered in the school's property itself in the relative shortage of parking spaces; no danger was let loose on the school's property which resulted in injury to plaintiff on the adjoining public highway." Id. at 5-6, 533 A.2d 398. See also Levin v. County of Salem, 133 N.J. 35, 44, 626 A.2d 1091 (1993) (citations omitted) ("Heretofore, courts have understood a `dangerous condition' as defined in N.J.S.A. 59:4-1(a) to refer to the `physical condition of the property itself and not to activities on the property'").
If the absence of markings or a turning lane on Route 72 is the dangerous condition, predicating the County's liability on that condition requires showing that the County "owned or controlled" the relevant portion of State highway, Route 72. Plaintiff does not claim the County owned the State highway, but she appears to be arguing that there is evidence of "control."
There is evidence that the County engineer approached the State highway department one year before the subject collision to discuss remedying the dangerous *1121 intersection and then desisted from any action because the State planned to act. It is not clear whether the County intended to proceed on its own before it learned of the State's plans or whether it was suggesting remedial measures to be taken by the State. However, for the purpose of this motion for summary judgment, we will assume that the County itself intended to stripe or build a turning lane on the State highway and that the State would have acquiesced in the County's doing so. But these facts do not establish that the County had "control" over the property.
Ball v. New Jersey Bell Tel. Co., 207 N.J.Super. 100, 107, 504 A.2d 29 (App. Div.), certif. denied, 104 N.J. 383, 517 A.2d 391 (1986), demonstrates that a public entity's ability to take protective or remedial measures on the property of another entity does not establish its "control" of that other entity's property. In Ball, the dangerous condition which was a proximate cause of the plaintiff's decedent's death was the telephone company's placement of a telephone pole on the traffic side of a guardrail on an exit ramp leading from a State highway. Id. at 103-04, 504 A.2d 29. The plaintiff claimed that the State, Ocean County, and Berkeley Township were liable because each of them had failed to remedy the condition. Id. at 103, 504 A.2d 29. Opposing a motion for summary judgment in favor of the county and the municipality, the plaintiff argued that, although the telephone pole was on State property, both the county and the municipality were liable because both of them "were fully cognizant of the dangerous condition of the road and ... their failure to warn the appropriate State officials or take other remedial steps was palpably unreasonable and thereby subjected them to liability pursuant to N.J.S.A. 59:4-2." Id. at 107, 504 A.2d 29. We rejected that contention in terms which assume that the county could have taken remedial action:
By its very terms, liability under this section is limited to injuries proximately caused by a dangerous condition on the property owned by the public entity. McGowan v. Eatontown, 151 N.J.Super. 440, 446, 376 A.2d 1327 (App.Div.1977); Danow v. Penn Central Transportation Co., 153 N.J.Super. 597, 600-601, 380 A.2d 1137 (Law Div.1977); N.J.S.A. 59:4-1(c). Nothing in the legislative history suggests that a public entity is liable for injuries sustained by virtue of a dangerous condition existing on the property of another. See Report of the Attorney General's Task Force on Sovereign Immunity (May, 1972). Extension of governmental tort liability in the manner urged by plaintiff here would clearly subvert the plainly expressed legislative mandate which is to immunize public bodies except where there is a statutory declaration to the contrary. N.J.S.A. 59:2-1. See also Malloy v. State, 76 N.J. 515, 519, 388 A.2d 622 (1978).

[Id. at 107-08, 504 A.2d 29.]
We conclude, therefore, that if the absence of markings or a turning lane on Route 72 is viewed as a "dangerous condition" which was a proximate cause of Mr. Weiser's accident, the County is not liable under N.J.S.A. 59:4-2(a) because those omissions are not inherently dangerous conditions of property owned or controlled by the County. For the following reasons, we also conclude that if the absence of markings or a turning lane on Route 72 is viewed as a failure to take appropriate curative measures after notice, the County's failure to act does not make it liable under N.J.S.A. 59:4-2(b).
If the County's culpability is its failure to paint markings, it is immunized from liability by N.J.S.A. 59:4-5, which states:
Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide ordinary traffic signals, signs, markings or other similar devices.
We have held that this provision immunizes a public entity from liability for failure *1122 to provide warnings even in a case where the entity's own culpability created the necessity for a warning. See Aebi v. Monmouth County Highway Dep't, 148 N.J.Super. 430, 433, 372 A.2d 1130 (App. Div.1977), quoted with approval in Kolitch v. Lindedahl, 100 N.J. 485, 496, 497 A.2d 183 (1985). If the County's liability is sought to be based on its failure to construct a turning lane on the State highway, we hold that, as a matter of law, its failure to do so after learning that the State was planning remedial action was not "palpably unreasonable." N.J.S.A. 59:4-2. Cf. Garrison v. Township of Middletown, 154 N.J. 282, 310-11, 712 A.2d 1101 (1998).
The judgment appealed from is therefore affirmed.