```
┌─────────────────────────────────────────────────────────┐
│              NOT FOR PUBLICATION WITHOUT THE             │
│            APPROVAL OF THE APPELLATE DIVISION            │
│                                                         │
│ This opinion shall not "constitute precedent or be binding upon any court." │
│ Although it is posted on the internet, this opinion is binding only on the │
│    parties in the case and its use in other cases is limited. R.1:36-3.     │
└─────────────────────────────────────────────────────────┘
```

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0305-15T4

JOSE CONTRERAS MORALES, BY AND
THROUGH HIS GUARDIAN AD LITEM,
LILIANA MORALES FERNANDEZ,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

SUSSEX COUNTY COMMUNITY
COLLEGE AND SOPHIE DUTKOWSKI,

    Defendants-Respondents/
    Cross-Appellants,

and

CARROLL SERVICES, INC.,

    Defendant-Respondent/
    Cross-Respondent,

and

FIDEL RODRIGUEZ AND CAMPBELL'S
SMALL ENGINE SALES AND SERVICE,
INC.,

    Defendants.

_____

Argued May 17, 2017 — Decided August 30, 2017

Before Judges Fuentes, Simonelli and Carroll.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0320-13.

Edward P. Capozzi argued the cause for appellant/cross-repondent (Brach Eichler, LLC, attorneys; Mr. Capozzi and Kristofer C. Petrie, on the briefs).

Jeffrey L. Shanaberger argued the cause for respondents/cross-appellants Sussex County Community College and Sophie Dutkowski (Hill Wallack LLP, attorneys; Mr. Shanaberger, on the briefs).

Allen Hantman argued the cause for respondent/ cross-respondent Carroll Services, Inc. (Morris & Hantman, attorneys; Mr. Hantman, on the brief).

PER CURIAM

Plaintiff Jose Contreras Morales, a landscaping employee of defendant Carroll Services, Inc. (Carroll), sustained serious injuries during his second season performing landscaping services at the campus of defendant Sussex County Community College (SCCC). At the time of the accident, plaintiff was driving a SCCC-owned John Deere X300 residential riding tractor/lawnmower (the mower) down a descending grade of a paved roadway on the campus when the left rear axle suddenly and unexpectedly broke, causing the left rear wheel to come off. Plaintiff was ejected forward onto the roadway and the mower landed on top of him.

Plaintiff advanced two theories of liability against SCCC: (1) negligent training on how to use the mower; and (2) creation of a dangerous condition on SCCC's premises by providing him with improper equipment (a residential mower instead of a commercial/industrial mower) that was unsuitable for the campus terrain. The New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, governs plaintiff's claims against SCCC.

Plaintiff appeals from the August 12, 2015 Law Division order, which granted summary judgment to SCCC and dismissed the amended complaint and all cross-claims against it with prejudice.[1] SCCC cross-appeals from the October 28, 2015 order, which denied its motion to vacate dismissal of its cross-claim against Carroll. We affirm the August 12, 2015 order, reverse the October 28, 2015 order, and remand for further proceedings regarding the dismissal of SCCC's cross-claim.

## I.

We derive the following facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment

---

[1] Plaintiff also appealed from the grant of summary judgment to defendant Sophia Dutkowski, SCCC's head custodian, but does not address that dismissal in his merit brief. Accordingly, all issues relating to Dutkowski are deemed waived. N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div.), certif. denied, 222 N.J. 17 (2015); Pressler & Verniero, Current N.J. Court Rules, comment 5 on R. 2:6-2 (2017).

motion, viewed in the light most favorable to plaintiff. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)).

On April 1, 2011, SCCC contracted with Carroll to provide janitorial services to its campus buildings. The contract specified that Carroll was an independent contractor exercising complete control over its employees. The contract required Carroll to maintain all forms of insurance required by New Jersey law and name SCCC as an additional insured. The contract also required Carroll to indemnify and hold SCCC harmless for all damages, losses, claims, suits, actions, and judgments that arose as a result, in whole or in part, of the breach of the contract, professional negligence, intentional acts, omissions, or other failures of Carroll to perform.

SCCC also contracted with Carroll to provide experienced temporary personnel to perform outside landscaping services at the campus, whom SCCC direct and supervise. This was the first time Carroll provided landscaping services. It did not provide any landscaping equipment for its employees to use at SCCC.

Carroll required persons hired to work at SCCC to have experience in performing landscaping services. Carroll's manager, Fidel Rodriguez, interviewed and hired plaintiff, who represented he had prior landscaping experience. In 2011, Carroll assigned

plaintiff and another employee, Victor Lugo, to perform landscaping services at SCCC. Plaintiff's job was to mow lawns on campus, using SCCC's mower. SCCC had purchased the mower new in 2008 from Campbell's Small Engine Sales & Service, Inc. (Campbell's). Campbell's also proactively serviced and maintained the mower on a regular basis. Campbell's last serviced and road-tested the mower on April 24, 2012, found no problem with the left rear axle, and did not bring any problem with the axle to SCCC's attention.[2]

Thomas Taylor, a SCCC building and grounds maintenance employee, instructed plaintiff and Lugo on how to use the mower. Although plaintiff spoke Spanish, Taylor was able to communicate with him relying on Lugo to act as an interpreter. After giving Lugo the operator's manual, which was written in English, Taylor instructed the men how to check the oil, fluids, and belts, and start the mower. The three men then went out into the parking lot by the garage, where plaintiff and Lugo drove the mower under Taylor's supervision. Taylor also showed them how to use the mower deck, and had them mow grassy areas by the garage to confirm they were able to perform their duties correctly. Thereafter,

---

[2] Plaintiff originally named Campbell's as a defendant in this matter, but voluntarily dismissed all claims against it with prejudice.

plaintiff used the mower to mow around trees and areas closer to the buildings, while Taylor used a commercial tractor to mow bigger lawn sections of the campus. Taylor also directed plaintiff to mow the grass sideways on the hill, rather than up and down, which was contrary to the instructions in the operator's manual. Prior to June 12, 2012, plaintiff used the mower numerous times without incident; there was no evidence he operated the mower improperly at any time.

Carroll again assigned plaintiff to perform landscaping services at SCCC's campus in 2012. On June 21, 2012, plaintiff was driving the mower down a paved roadway on the campus when he was ejected onto the roadway and the mower landed on top of him. There were no witnesses to the accident. An SCCC custodian was the first person to come upon the scene. He lifted the mower from plaintiff's chest and head and then ran to have someone call 9-1-1. Plaintiff suffered numerous skull fractures and a traumatic brain injury. He never regained consciousness and has remained in a coma since the accident.

In a written report, plaintiff's landscaping expert, Chris James, opined that two factors directly contributed to the accident: (1) little to no training on the proper use of the mower; and (2) the lack of an ongoing training program to reinforce proper equipment use and safe operation. He stated that "[a] short,

onetime training does not address the questions and concerns of an untrained operator, nor proves the operator has reached a level of safe operation or proficiency with a piece of equipment." He also noted that Taylor showed a high level of incompetence to train anyone in safe lawnmower operation when he incorrectly instructed plaintiff to mow grassy hills from side-to-side when they should be mowed up and down.

Significantly, James did not opine as to how the lack of training or an ongoing training program actually caused or contributed to the accident, which occurred while plaintiff was riding the mower down a paved road, not mowing grassy hills side-to-side. He did not issue a supplemental report or certification expanding his opinion.[3]

Plaintiff's accident reconstruction expert, Steven M. Schorr, P.E., found the mower deck was replaced at three years when normally it would last for ten years, and the mower was used well in excess of seventy-five-hours-per-year, which was normal usage. While he opined these two factors showed the mower was being used

---

[3] SCCC did not depose James. Plaintiff argues on appeal that had SCCC done so, James would have expanded his opinion to include that the mower had no brake pedals and SCCC's failure to instruct him not to drive the mower down the steep roadway contributed to the accident. However, SCCC was not required to depose James, and there was evidence that contradicts plaintiff's claim the mower lacked brake pedals.

A-0305-15T4

in ways other than its intended purpose and design, he did not opine how they caused or contributed to the accident.

Schorr noted that at the time of the accident, plaintiff was driving the mower on a roadway with an extremely steep grade. He saw scrapes/gouges in the roadway that appeared to be fresh and were located approximately thirty-five feet from where the mower came to rest at the bottom of the roadway. He noted that the scrapes/gouges were physical evidence consistent with a failure of the mower's axle. He concluded that the mower's left rear axle failed, which caused the left rear wheel assembly to separate and the mower to rotate in a counterclockwise direction while continuing onward, ejecting plaintiff forward onto the roadway.

Schorr opined in his written report that the accident occurred as the result of a combination of the severity of the downgrade of the roadway and failure of the left rear axle. However, he testified at deposition that the roadway's slope varied from a higher grade of 21.6% at the top to a lower grade of 0.8% at the bottom, and admitted he could not determine the slope at the point where the axle failed or whether it failed at the top of the roadway or closer to the bottom. He also admitted the scrapes/gouges were located at a grade of plus or minus three percent; he was not opining that the slope of the downgrade caused the axle to fail; and he did not know if the grade of the roadway

was a factor in the happening of the accident. He also admitted that while slope would have an effect on plaintiff's ability to maintain control of the mower once the axle failed, he could not identify where on the roadway plaintiff lost control of the mower. He also could not determine the speed plaintiff was traveling when the axle failed, and did not know what actions plaintiff took when it failed.

Unlike James and Schorr, SCCC's accident reconstruction expert, Stephen N. Emolo, P.E., inspected the preserved mower and examined the operator's manual. He found the mower had a braking system that included a brake pedal, and the mower was in proper working order prior to the accident. He noted that once the left rear axle failed, the left rear wheel separated from the mower and rendered the brakes inoperable. He opined that the axle's failure was unexpected and could not have been anticipated or prevented by any type of service or maintenance procedures. He also opined that because plaintiff was not mowing grass at the time of the accident, the alleged lack of training had no bearing on the type of failure that occurred to the axle.

Unlike James and Schorr, Emolo also reviewed the operator's manual. He noted that the mower was sold to both commercial and residential users and the operator's manual did not prescribe any special training. Based on his review of the operator's manual,

9

he opined there was no evidence that SCCC or plaintiff improperly used the mower for anything other than mowing grass; the mower was being properly used for that purpose; and the fact that the mower was being driven on hilly terrain did not render its use improper. He also found there was no evidence that prohibited the mower from being driven straight down a steep incline, and there were no special operating instructions to drive the mower in that manner.

Emolo found no evidence that the alleged severity of the slope or downgrade played a causal role or was a contributing factor in the axle's failure or plaintiff's accident. He noted that based on the location of the scrapes/gouges, the axle failed at the bottom of the descending grade of the roadway where the grade was only approximately three percent. It is undisputed that the cause of the axle failure is unknown.

Following the completion of discovery, SCCC filed a motion for summary judgment, arguing that plaintiff could not prove his causation under either of his theories of liability. In a written statement of reasons, citing Cassano v. Aschoff, 226 N.J. Super. 110 (App. Div.), certif. denied, 113 N.J. 371 (1988), the motion judge found SCCC had no duty to train plaintiff because a landowner's liability does not extend to employees of an independent contractor whose injuries arose from the risks inherent in the work they were hired to perform. The judge found

SCCC properly assumed that plaintiff was appropriately trained and possessed sufficient knowledge and skill to safely perform the work of a landscaper.

Because the cause of the axle failure was unknown, the judge rejected plaintiff's theory that overuse of the mower was the cause. The judge also held that plaintiff could not sustain a claim under N.J.S.A. 59:4-2 based on a dangerous condition of SCCC's property. The judge found there was no evidence the roadway was in a dangerous condition or played a causal role in the accident; no expert opined that SCCC's property amounted to a dangerous condition; and there was no evidence that any alleged dangerous condition of the roadway was a proximate cause of the accident. The judge emphasized that the location where the axle failed was unknown.

Lastly, the judge found it was undisputed that equipment failure was the cause of the accident. The judge concluded that plaintiff failed to establish a nexus between speculation as to what may have contributed to the accident and the actual cause of equipment failure.

On appeal, plaintiff contends that SCCC assumed a duty to train him and he produced sufficient evidence to prove negligent training. Plaintiff also argues he produced sufficient evidence to prove that SCCC created a dangerous condition on its premises

A-0305-15T4

by providing improper equipment that was unsuitable for the terrain.[4]

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. <u>Templo Fuente De Vida Corp. v. National Union Fire Ins. Co.</u>, 224 <u>N.J.</u> 189, 199 (2016) (citation omitted). Thus, we consider, as the trial judge did, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.</u>, 189 <u>N.J.</u> 436, 445-46 (2007) (quoting <u>Brill</u>, <u>supra</u>, 142 <u>N.J.</u> at 536). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." <u>Templo Fuente</u>, <u>supra</u>, 224 <u>N.J.</u> at 179 (quoting <u>R.</u> 4:46-2(c)). If there is no genuine issue of material fact, we

---

[4] We decline to address plaintiff's additional argument that landowner liability does not extend to employees of independent contractors when the landowner retains control over the means and methods of the work. Plaintiff did not raise this argument before the motion judge and it is not jurisdictional in nature nor does it substantially implicate the public interest. <u>Zaman v. Felton</u>, 219 <u>N.J.</u> 199, 226-27 (2014) (citation omitted). For the same reason, and because plaintiff never pled it as a cause of action, we decline to address his argument that he presented sufficient evidence to prove negligent misrepresentation.

must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). Applying these standards, we discern no reason to reverse the grant of summary judgment.

## II.

The issue of causation is ordinarily left to the factfinder. Townsend v. Pierre, 221 N.J. 36, 60 (2015) (citation omitted). That rule, however, is not absolute, and the issue of proximate cause "may be removed from the factfinder in the highly extraordinary case in which reasonable minds could not differ on whether that issue has been established." Ibid. (citation omitted). "Thus, in the unusual setting in which no reasonable factfinder could find that the plaintiff has proven causation by a preponderance of the evidence, summary judgment may be granted dismissing the plaintiff's claim." Ibid. To prove causation, plaintiff bears the burden to:

> introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the

A-0305-15T4

> probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
>
> [Id. at 60-61 (citation omitted).]

Plaintiff cannot prove his negligent training claim. Even assuming SCCC had a duty to train or voluntarily assumed that duty, there is no evidence that negligent training was a proximate cause of the accident. The operator's manual did not prescribe any special training and there is no evidence of any training that would have prevented the accident. Plaintiff was not mowing grass at the time of the accident, and there was no evidence of operator error that led to the axle failure or caused the accident.

More importantly, it was undisputed that the unexpected mechanical failure of the left rear axle was the cause of the accident, and its cause was unknown. The mower was last serviced less than two months before the accident, and there were no reported problems with the axle. In light of this, plaintiff cannot demonstrate how any alleged overuse or misuse due to negligent training played a role in the axle's failure or the accident itself.

Plaintiff also cannot prove that SCCC created a dangerous condition on its premises. This claim is governed by N.J.S.A. 59:4-2, which provides as follows:

A public entity is liable for injury caused
by a condition of its property if the
plaintiff establishes that the property was
in dangerous condition at the time of the
injury, that the injury was proximately caused
by the dangerous condition, that the dangerous
condition created a reasonably foreseeable
risk of the kind of injury which was incurred,
and that either:

a. a negligent or wrongful act or omission
of an employee of the public entity within the
scope of his employment created the dangerous
condition; or

b. a public entity had actual or
constructive notice of the dangerous condition
under [N.J.S.A.] 59:4-3 a sufficient time
prior to the injury to have taken measures to
protect against the dangerous condition.

Nothing in this section shall be construed to
impose liability upon a public entity for a
dangerous condition of its public property if
the action the entity took to protect against
the condition or the failure to take such
action was not palpably unreasonable.

A "dangerous condition" is a "condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a). A substantial risk of injury is a risk that is not minor, trivial, or insignificant. Polyard v. Terry, 160 N.J. Super. 497, 509 (App. Div. 1978), aff'd, 79 N.J. 547 (1979). The dangerous condition "must be inherent in the property[,]" Weiser v. County of Ocean, 326 N.J. Super. 194, 200 (App. Div. 1999), which will not be considered dangerous if

the condition only exists when the property is used without due care. Garrison v. Twp. of Middletown, 154 N.J. 282, 287 (1998). "Used with due care" refers to an objectively reasonable standard of the general public, not to the injured party. Id. at 291. Whether a dangerous condition exists "depends on whether the property creates a substantial risk of injury to persons generally who would use the property with due care in a foreseeable manner." Ibid. (citation omitted).

Plaintiff now concedes that the roadway itself was not an inherently dangerous condition. Although Schorr initially opined that a combination of the severity of the downgrade and failure of the left rear axle caused the accident, he could not conclude where on the roadway the axle failed, or whether the grade of the roadway caused the axle failure or was a factor in the happening of the accident. Thus, the gradient of the roadway is irrelevant.

Nevertheless, plaintiff now argues that the dangerous condition was the roadway and the improper and overused equipment that rendered the roadway a dangerous condition. However, there was no evidence that the mower was improperly used or overused, or that improper use or overuse caused or contributed in any way to the sudden and unexpected axle failure or the accident. In sum, there was no proof whatsoever that SCCC created a dangerous condition; had actual or constructive notice of the dangerous

16

condition; or that its action was palpably unreasonable. We therefore conclude that the grant of summary judgment was proper.

### III.

SCCC asserted a cross-claim against Carroll for contractual indemnification and breach of contract in failing to procure insurance that would defend SCCC against and indemnify SCCC for plaintiff's claims. Carroll never sought dismissal of the cross-claim. Nevertheless, the motion judge believed the August 12, 2015 order was final and administratively dismissed it. The judge determined he lacked jurisdiction to consider SCCC's motion for reconsideration to reinstate the cross-claim because plaintiff had already filed a notice of appeal.

The minimum requirements of due process of law are notice and an opportunity to be heard. Doe v. Poritz, 142 N.J. 1, 106 (1995). The opportunity to be heard contemplated by the concept of due process means an opportunity to be heard at a meaningful time and in a meaningful manner. Ibid. Our rules of court mandate that motions be made in writing. R. 1:6-2(a). Moreover, a motion for summary judgment must be filed no later than twenty-eight days before the return date, R. 4:46-1, and the party seeking summary judgment must file a brief and a statement of material facts in support of the motion. R. 4:46-2(a). The purpose of these rules is obvious, that is, to afford the non-moving party notice of the

17

application and a meaningful opportunity to respond. "We cannot condone a procedure whereby a judge sua sponte, without notice to a party, resorts to a shortcut for the purposes of good administration and circumvents the basic requirements of notice and opportunity to be heard." Klier v. Sordoni Skanska Const. Co., 337 N.J. Super. 76, 84-85 (App. Div. 2001).

In view of the lack of necessary due process here, we reverse the October 28, 2015 order, vacate the dismissal of SCCC's cross-claim against Carroll, and remand for further proceedings regarding the dismissal of the cross-claim. We express no view as to the merits of the cross-claim.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION