152 N.J. Super. 228 (1977)
377 A.2d 934
ALEXANDRIA META, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF CHERRY HILL AND COUNTY OF CAMDEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1977.
Decided August 11, 1977.
*229 Before Judges FRITZ, ARD and PRESSLER.
Mr. William R. Hopkin, Jr. argued the cause for the appellant (Messrs. Tomlin and Tomlin, attorneys; Mr. David C. Harrison on the brief).
Mr. Neil F. Deighan, Jr., argued the cause for respondent Township of Cherry Hill (Messrs. Kisselman, Deighan, Montano & Summers, attorneys).
Mr. John L. Slimm argued the cause for respondent County of Camden (Messrs. Orlando, Forgash & Slimm, attorneys).
*230 PER CURIAM.
This is an action for personal injuries against public entities arising out of a motor vehicle accident which occurred at about 7:15 P.M., January 29, 1973, on Springdale Road in Cherry Hill Township, Camden County. The court entered summary judgment in behalf of both defendants, relying on Amelchenko v. Freehold Borough, 42 N.J. 541 (1964), and N.J.S.A. 59:4-7. Plaintiff appeals from this determination.
Inasmuch as the matter is before us on appeal from a grant of summary judgment, we accept as true all facts appearing in the record and reasonable inferences drawn therefrom in the light most favorable to plaintiff. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954).
The facts are not really in dispute. On January 29, 1973, at about 7:15 P.M., on a very cold night, plaintiff, a 29-year-old woman, was driving on Springdale Road, a dimly lit county road in Cherry Hill Township. She was returning home from a dance class, having traveled this route on her way to class. She described the road as having ice in spots. It had been raining during the day, and apparently there was a substantial temperature drop during the evening hours. While proceeding on this road she saw a patch of ice and her car began to skid out of control across a narrow bridge, hitting another car head-on. Her speed at the time was about 30 miles an hour in a 50 mile per hour zone. She was seriously injured.
The township engineer, by way of deposition, indicated he had no supervisory duties over county roads. Upon receiving a complaint concerning a county road, the township employees were instructed to take the complaint and advise the complainer that the matter should be brought to the county's attention. If it was felt necessary, the township might notify the county. The county engineer of roads testified that the county maintains an answering service for calls received after working hours.
Another county employee testified by way of deposition that the county was divided into three sections, with a supervisor *231 in charge of each section. Upon receipt of complaints the supervisor would call the county truck drivers by radio. He also stated that it was common for the police to call in complaints.
By way of affidavit, Officer Francis G. Herbst of the Cherry Hill Township Police averred that:
* * * At approx. 5:00 pm on 1/29/73 I received a call about and investigated an accident on Springdale Road * * *. This accident was caused by extremely icy road conditions and while I was at the scene handling this accident I called the dispatcher, Thomas Schultz, and advised him to notify the Camden Co. Highway Dept. of these icy conditions so they could salt or sand the highway. After I finished this accident I checked the entire length of Springdale Rd. and Kresson Rd. from Township line to Township line and found both roadways to be covered with large patches of ice, especially in the low lying areas. The entire roadways were not covered with ice but the patches were certainly large enough to be a severe hazard to driving conditions. * * * [A]nd in the next 2-3 hours I made another 2 or 3 calls to the dispatcher about the icy roads and he assured me every time that he had notified the County Dept. but the County didn't know when or if they could get around to these roads. I wanted to close both Springdale and Kresson Roads to traffic because of these hazardous conditions but I was overruled by my superior officer. The County Highway Dept. was definitely notified of these hazardous conditions at least 3 times in a period of 3 hours * * *.
In opposing the motions for summary judgment appellant's attorney also submitted an affidavit which alleged an inspection of the site of the accident, made after the accident, revealing the fact that
* * * [T]he ditch upon the North side of the roadway was substantially filled with silt and vegetation with the effect that water was visibly caused to flow out onto the paved portion of the roadway.
Testimony will be offered at the time of the trial of the within cause to the effect that when vehicles travel generally West on this roadway and their tires come in contact with the water which has overrun the roadway thereat, there is a tendency for spray to be created over the entire surface of the roadway, and, as a result, a very slippery condition did ensue.
The affidavit also alleged that the files of the Cherry Hill Township Police contained reports relating to other accidents having occurred at the same location.
*232 This accident occurred after the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., became effective. Respondents argue they are immune from liability by virtue of N.J.S.A. 59:4-7, which provides:
Neither a public entity nor a public employee is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions.
We disagree. Appellant does not urge that her injury was caused solely by the icy condition of the road. She argues that the injuries were caused by the failure of the township and the county to act reasonably either to alleviate the dangerous condition after being advised of its presence, or to advise the public of its presence, or to close the road to protect the public from the hazard. We think this argument has merit. The jury should have been permitted to determine whether the public entities acted reasonably in failing to salt or sand the areas known to be dangerous; failing to post warning signs, or failing to block off the entire road.
Moreover, N.J.S.A. 59:4-4 provides as follows:
Subject to section 59:4-2 of this act, a public entity shall be liable for injury proximately caused by its failure to provide emergency signals, signs, markings or other devices if such devices were necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.
The comment after the statute is extremely pertinent.

Comment  1972
This provision declares that liability may exist for the failure on the part of a public entity to provide an emergency warning signal or device when a condition exists constituting a "trap" to a person using a street or highway with due care. It should be noted, however, that a public entity's liability for failure to provide such signals or devices must be measured against the standard of whether the entity's action or inaction was "palpably unreasonable." Bergen v. Koppenal, 52 N.J. 478, 480, 246 A.2d 442 (1968).
*233 Whether it was palpably unreasonable for the public entities in this case to fail to take action with regard to this condition after being advised by Officer Herbst was clearly a jury question. The granting of summary judgment was an usurpation of the jury function.
Additionally, the public entities rely on Amelchenko v. Freehold, supra, which involved a fall-down in a municipal parking lot prior to the municipality taking any action to remove the snow. In upholding the municipality's right to set up schedules and priorities with respect to snow removal the court stated:
* * * The duty, especially regarding snow removal following a storm, must be measured by a number of factors. In applying the measure it is necessary to do so with an understanding of the nature of the problem facing municipalities. Instantaneous removal in climates such as ours is neither required nor feasible. Much depends upon the size of the task the particular municipality is called upon to face, the severity of the storm, the miles of streets and number of public places to be cleared, the amount of equipment provided and the personnel made available for the purpose, and the practicability and efficiency of the efforts to meet the problem. Moreover, when a street department is established, obviously the governing body determines the number of employees to be assigned to it and the amount of snow removal equipment to be purchased and made available for ordinary municipal needs. That determination is a matter of judgment committed under our system of government to the local authority and it should not be interfered with by the courts in a tort damage suit.
Moreover, establishment of a general method of handling snow-storms is a matter of planning. The decision adopting a procedure regulating when, where and in what order of priority the equipment and personnel are to be used in dealing with them is legislative or governmental in nature. Such decisions cannot be subject to review in tort suits for damages, for this would take the ultimate decision-making authority away from those who are responsible politically for making the decisions. * * * [42 N.J. at 549-550]
This court has neither the authority nor the inclination to disagree with Amelchenko. In this case, however, the facts are different. The accident to plaintiff occurred several hours after Officer Herbst had actual knowledge of the hazardous conditions. Moreover, his superior officer and *234 the county highway department were also notified of these hazardous conditions. We do not construe Amelchenko to permit the public entity to ignore hazardous conditions, when actually notified of same, in order to follow a prearranged plan or schedule of snow removal or like public works. Scheduling priorities cannot be used as an excuse for lack of immediate action when notified of an emergent condition.
Moreover, our courts have recognized the distinction. In Bergen v. Koppenal, 52 N.J. 478 (1968), the court stated:
* * * [W]e think it fair to say that a duty may be found if a police officer learns of an emergent road condition which is likely not to be observed by a motorist and which holds an unusual risk of injury. In such circumstances the municipality must act reasonably to guard the traveler until the appropriate authority, here the State's own agencies, can take over. In such an inquiry, the municipality may prove the police did not act because of competing demands upon the police force. If such proof is in the case, the jury should be instructed that, with respect to the issue of competing demands, the jury may not disagree with the police deployment judgment unless it is palpably unreasonable. In permitting a jury to deal with the issue of competing demands, we should emphasize that we are not modifying the rule of Hoy v. Capelli, supra [48 N.J. 81, 85-86 (1966)] and Amelchenko v. Borough of Freehold, 42 N.J. 541 (1964), that high-level policy decisions may not be reviewed at all by a jury. We are here dealing with a situation in which because of the special circumstances stated above the municipality could be found to have a duty to act and as to which the municipality may have omitted to act because of other demands upon its police. [at 480]
In this case the police officer felt the condition constituted "an emergent road condition which [was] likely not to be observed by a motorist and which [held] an unusual risk of injury" and quite properly the municipality and county were notified, not once but several times. We are satisfied that it was the function of the jury to determine whether either or both of the public entities acted reasonably under the circumstances.
Reversed and remanded for trial.