178 N.J. Super. 146 (1981)
428 A.2d 528
JENNIFER BROTHERS, ETC., ET AL., PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF HIGHLANDS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1980.
Decided March 10, 1981.
*148 Before Judges FRITZ, POLOW and JOELSON.
Martin M. Rudnick argued the cause for appellants (Auerbach, Rudnick, Waldman and Ford, attorneys; Philip G. Auerbach of counsel and on brief).
H. Frank Carpentier argued the cause for respondent (Carton, Nary, Witt & Arvanitis, attorneys).
The opinion of the court was delivered by FRITZ, P.J.A.D.
The complaint against the municipality in this matter was filed on behalf of an infant who suffered serious burns resulting from the spreading of a fire intentionally set in a privately-owned structure adjoining the cottage in which the infant was sleeping. While the two-count complaint sounds in negligence, it is inordinately difficult to ascertain what it is plaintiffs claim the municipality did which it should not have done or failed to do which it should have done. The complaint *149 charges in the first count only "the negligent failure of the [municipality] ... to take action to protect its citizens" as a causative agent for the fire. The second count is no more definitive. It charges "the negligent failure ... to take action." These allegations follow assertions that the municipality "was aware that the buildings [at the site of the set fire] were aged, decrepit, and highly susceptible to fires and the spread thereof," and that it "had knowledge that several recent fires had occurred on the premises." Additionally, it is said that the municipality "knew or should have known that similar fires were likely to occur in the future and that any fires [on the site of the set fire] presented a serious danger to the person and property of its citizens." But with all this, no more is suggested in the complaint than that with knowledge of these conditions the municipality "failed to condemn such structures for demolishing or in some other manner take action to provide for the welfare and safety of its citizens." (Emphasis supplied). At the outset, we observe in passing the difficulty inherent in determining whether a municipality acted unreasonably in a situation where plaintiffs do not (or cannot) more particularly define what it is the members of the governing body should have thought to do.
The trial judge granted the motion of the municipality for summary judgment. Evidently he, too, was concerned by the absence of precision in the charge against the municipality for he obviously was not at all certain what it was plaintiffs expected. He said:
Now, a municipality may be liable for negligence only if its alleged actions fall within the purview of this particular statute and the argument is made that the Borough failed to endorse [sic] something after they found out that there was a problem and after investigation. But they failed to condemn or demolish or advise people of a dangerous condition.
N.J.S.A. 59:2-6 reads in part:
"A public entity is not liable for injury caused by its failure to make an inspection of any property provided, however, that nothing in this section shall exonerate a public entity from liability for failure to protect against a dangerous condition as provided in Chapter 4."
When they talk in terms of "dangerous condition," they are talking about the condition of property. Here, the property was not owned by the municipality.

*150 So with respect now to Section 59:2-4 which would be applicable, it says, "A public entity is not liable for an injury caused by adopting or failing to adopt a law or by failing to enforce any law."
It is clear in this particular case the plaintiff, unfortunately as far as a municipality is concerned, is on the horns of a dilemma. Either the charge must be made that the municipality failed to enforce a law, and if they failed to enforce the law, then there's immunity under the statute; or that the municipality didn't carry out something to its ultimate conclusion where there was no obligation to do it, and again there is immunity under the law.
But for the reason stated I find there is immunity under the pertinent sections of Title 59 and the cases cited by the moving party and the motion for summary judgment is granted.
In any event, we are satisfied that the trial judge reached the correct result.
Plaintiffs urge that the Legislature intended N.J.S.A. 59:4-1 through 3 to extend to property not owned by the municipality on the theory that that statute intends to withhold immunity from "controlled property." They argue that this means "property falling within [the municipality's] geographical area ... as to which, it had general rights of control." We reject this suggestion out of hand.
First, the plain language of the statute is to the contrary. Note, for instance, the repetition in N.J.S.A. 59:4-2 of reference to "its property" and "its public property." (Emphasis supplied.) Both Bergen v. Koppenal, 52 N.J. 478 (1968) and McGowan v. Eatontown, 151 N.J. Super. 440 (App.Div. 1977), cited by plaintiffs, are readily distinguishable.
Second, in view of the fact that the Tort Claims Act was not designed to create liability but rather as a legislative imperative to re-establish immunity, as we observed in Burg v. State, 147 N.J. Super. 316, 320 (App.Div. 1977), certif. den. 75 N.J. 11 (1977), we respect the view of the comment from the Report of the Attorney General's Task Force on sovereign immunity, May 1972, that courts should "exercise restraint in the acceptance of novel causes of action against public entities."
*151 There is some evidence that a concern for prior vandalism caused patrol cars to be alerted to the possibility of recurrence and policemen to chase loiterers and seek public assistance in the nature of notification of peculiar or unusual occurrences or circumstances. We do not believe this ordinary and to be anticipated police activity rises to the heights of conduct supplementing immune "basic policy determinations" sufficient to bring it within the ambit of Costa v. Josey, 83 N.J. 49 (1980). Nothing in that case intruded upon or diminished the clear statement of immunity protecting a public entity against claims involving the adoption or failure to adopt a law or the failure to enforce any law. N.J.S.A. 59:2-4. Compare National Spring Co. v. Pierpont Associates, Inc., 146 N.J. Super. 63 (Law Div. 1976). Nor do we believe that any duty to investigate sufficient to justify a search and seizure (State v. Royal, 115 N.J. Super. 439 (App.Div. 1971), certif. den. 59 N.J. 294 (1971)) imperils the immunity of a public entity with respect to consequent acts or failures to act. Wuethrich v. Delia, 155 N.J. Super. 324 (App. Div. 1978), certif. den. 77 N.J. 486 (1978). Such is no more than an exercise of discretion in the face of competing demands and is protected. N.J.S.A. 59:2-3(d). Plaintiffs analogize with Bergen v. Koppenal, supra, insisting that there was there a "tethering" of "the unencumbered immunity based upon `competing demands' as ... in the case of Amelchenko v. Freehold Borough, 42 N.J. 541, 201 A.2d 726 (1964)." Bergen v. Koppenal was concerned with immediately emergent circumstances involving the malfunctioning of property of a public entity. We believe the analogy is overdrawn. As we said in Massaker v. Petraitis, 173 N.J. Super. 459, 465 (App.Div. 1980), the Tort Claims Act "expressed a general policy to provide immunity with exceptions, rather than liability with exceptions."
In Miehl v. Darpino, 53 N.J. 49 (1968), our Supreme Court noted:
This Court concluded in Hoy v. Capelli, supra, 48 N.J., [81] at p. 87 that "there are certain kinds of acts or omissions of government, no matter how they *152 are categorized, defined or labelled or how governmental immunity from suit is to be regarded, which should not give rise to tort liability." At 54.
Beyond anything above, this just may be such a case.
Affirmed.