666 A.2d 169

WALTER ROBINSON, PLAINTIFF-APPELLANT, v. CITY OF JER-
SEY CITY, DEFENDANT-RESPONDENT, AND J & D LOFARO,
INC., JOHN DOE, FICTITIOUS AND PRESENTLY UNKNOWN,
JERSEY CITY WATER DEPARTMENT, JERSEY CITY SEWER-
AGE AUTHORITY, STATE OF NEW JERSEY, CITY OF JERSEY
CITY, SANITATION DIVISION, CITY OF JERSEY CITY, COUN-
TY OF HUDSON AND CLIFF LAKE ASSOCIATES, DEFEN-
DANTS.

Superior Court of New Jersey
Appellate Division

Argued September 12, 1995—Decided October 17, 1995.

Before Judges DREIER, ARNOLD M. STEIN and KESTIN.[1]

*Harry R. Howard* argued the cause for appellant (*Harry R. Howard*, P.A., attorneys; *Mr. Howard* on the letter brief).

*Steven J. Klotz*, Assistant Corporation Counsel, argued the cause for respondent (*Sean M. Connelly*, Corporation Counsel, attorney; *Mr. Klotz* on the brief).

The opinion of the court was delivered by

ARNOLD M. STEIN, J.A.D.

We reverse the verdict of no cause for action entered in favor of defendant City of Jersey City and against plaintiff.

This is a personal injury action. The accident happened on March 11, 1989 at approximately 6:00 a.m. Plaintiff was injured when his vehicle skidded on a 355-foot patch of ice that had formed on U.S. Highway 1 and 9 (also known in this area as

---

[1] Judge Kestin did not participate in oral argument. However, the parties consented to his participation in this decision.

Tonnelle Avenue), a state highway running generally north to south in Jersey City. Water from a broken water pipe or hose on property located at 628 Tonnelle Avenue ran down a hill onto the roadway causing gradual accumulation of the ice patch.

The testimony is in dispute as to when the City had actual notice of the condition. Anthony Lombardi, the City's then-Director and Superintendent of Water Distribution, testified at trial that he received an emergency call from the police and shortly thereafter went to the icy area. When he arrived, the road was already salted and a police car and a tow truck were present. It was still dark. At an earlier deposition, Lombardi had testified that he had received a call summoning him to Tonnelle Avenue sometime between midnight and 1:00 a.m. At both the deposition and the trial, he testified that he directed that a plumber be sent to 628 Tonnelle Avenue on the plumber's first assignment after beginning work at 8:00 a.m.

The trial judge gave the following instruction to the jury:

> Now, in this case, the plaintiff alleges that the City is responsible because of a dangerous condition which existed on public property. And as you know, the case involves an accident which occurred on public property, Tonnelle Avenue, but which is a state highway.

> There is no question but that the road is a public property. But it is not owned by Jersey City, it's owned by the state. The plaintiff charges that the condition of the roadway on Tonnelle Avenue was a dangerous condition of public property and that the dangerous condition was a proximate cause of his injuries. A public entity is responsible for injuries proximately caused by a dangerous condition of its property.

> The phrase "dangerous condition" has a particular meaning. *In order for you to find that there was a dangerous condition of public property, you must be satisfied by a fair preponderance of the credible evidence that all of the following things were true at the time of plaintiff's injury:*

> First, that the condition was one that created a substantial risk of injury, a risk that was not minor, trivial or insignificant to a person using the public property with due care, that is, reasonable care for his own safety and in a manner that the public entity ought to have reasonably foreseen or expected people to use the property.

> Second, that the condition was one that created a reasonably foreseeable risk of the kind of injury alleged by the plaintiff. It need not be of exact, the very same kind, but it must be an injury of the same class, order or type.

Third, that the condition was either, A, created by the negligent and wrongful act or omission of an employee or employees of the defendant City of Jersey City, within the scope of their employment, or, B, the defendant City had actual notice of the dangerous condition a sufficient time prior to the injury to have taken measures to repair, remedy or correct it, or to provide safeguards or to warn of the condition.

The defendant City had actual notice of the dangerous condition if you are satisfied it actually knew the condition existed and knew or should have known of its dangerous character. Actual notice is required because, as I indicated, this public property while within Jersey City was not owned by Jersey City.

Four, that the action—that the action defendant City took or its failure to take action to repair, remedy or correct the condition or to provide safeguards against it or to warn of the condition was palpably unreasonable. It must be more than merely careless or thoughtless or forgetful or inefficient. To be palpably unreasonable, it must be action or inaction that is plainly and obviously without reason or reasonable basis, capricious, arbitrary or outrageous.

[Emphasis added.]

Question No. 1 of the special interrogatories submitted to the jury asked:

1. Do you find, with reference to the City of Jersey City, that the condition of Tonnelle Avenue was a dangerous condition of public property, as the Court has defined dangerous condition for you?

The jury was further instructed:

If your answer to that question is no, you'll stop your deliberation and return your verdict. That would be the end of the case.

During deliberations, the jury asked:

What are all the elements that must be present to legally determine a dangerous condition?

In response, the judge repeated the previous instruction.

By a 6–0 vote, the jury answered "no" to question No. 1, and terminated its deliberations. The judge then molded a verdict into no cause for action in favor of the City.

■ The charge is flawed. Instead of defining "dangerous condition" and listing it as an element of the cause of action, it incorporates all of the components of the cause of action into the definition of "dangerous condition." The existence of a dangerous condition is only one of the essential elements of the cause of action against the public entity. It is not the cause of action itself.

Plaintiff was required to prove that the icy condition of the roadway was so extraordinary that it would not be reasonably apparent or anticipated by a careful motorist, *Rochinsky v. New Jersey Dept. of Transp.*, 110 *N.J.* 399, 416, 541 *A.*2d 1029 (1988); that the City had actual notice of the condition, *DeBonis v. Orange Quarry Co.*, 233 *N.J.Super.* 156, 172, 558 *A.*2d 474 (App.Div.1989); and that it was palpably unreasonable for the City to fail to take action with regard to this condition once it became aware of its existence, *Meta v. Cherry Hill*, 152 *N.J.Super.* 228, 233, 377 *A.*2d 934 (App.Div.), *certif. denied*, 75 *N.J.* 587, 384 *A.*2d 818 (1977). The City's duty for a dangerous condition on a roadway not owned by the City but located within its boundaries arises pursuant to *N.J.S.A.* 59:4–4 of the Tort Claims Act, *N.J.S.A.* 59:1–1 to 4–9:

Subject to section 59:4–2 of this act, a public entity shall be liable for injury proximately caused by its failure to provide emergency signals, signs, markings or other devices if such devices were necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.

The fact that the City had actual notice of the condition which caused the icing of the roadway was not itself sufficient to impose liability under *N.J.S.A.* 59:4–4. It was the icy condition of the roadway which created the emergent situation which, if the City had actual notice, might have required it to act to alleviate the condition, advise the public of its presence or close the road. *Meta, supra*, 152 *N.J.Super.* at 232, 377 *A.*2d 934.

■ The folding of all of the components of the cause of action into the definition of "dangerous condition" produced reversible error. The predawn existence of a 355–foot icy patch on an otherwise dry state highway was a dangerous condition as a matter of law. It was a "condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." *N.J.S.A.* 59:4–1a. Reasonable minds could not have differed on the dangerousness of the roadway at the time and place of the accident. *Johnson v. Salem Corp.*, 97 *N.J.* 78, 92, 477 *A.*2d 1246 (1984). The jury should have been instructed that the

condition was dangerous. The primary focus of the jury's inquiry should have been to determine whether the City had actual notice of the condition, *DeBonis, supra,* 233 *N.J.Super.* at 172, 558 *A.2d* 474, and whether it was palpably unreasonable of the City to fail to take reasonable action to alleviate the icy condition, advise the public of its presence, or close Tonnelle Avenue. *Meta, supra,* 152 *N.J.Super.* at 232, 377 *A.2d* 934.

The instruction improperly defined dangerous condition, an issue which should not have been submitted to the jury, and it failed to focus the jury's inquiry on the essential elements of the cause of action. Special interrogatory No. 1 was therefore improperly submitted to the jury. Failure to remove the issue of dangerous condition from jury consideration was "clearly ... a miscarriage of justice under the law." *R.* 2:10–1.[2]

Moreover, the instruction focused on issues germane to a claim under *N.J.S.A.* 59:4–2, not *N.J.S.A.* 59:4–4. It started with an explanation that "a public entity is responsible for injuries proximately caused by a dangerous condition of *its* property." (Emphasis added.) Later, the judge explained that actual notice was required because the highway "while within Jersey City was not owned by Jersey City." This inconsistency in the charge was clearly capable of causing confusion and misunderstanding, especially when considered with the judge's failure to clearly instruct the jury of the circumstances under which a municipality could be liable for injury resulting from the dangerous condition of a road it did not own. *Bergen v. Koppenal,* 52 *N.J.* 478, 480, 246 *A.2d* 442 (1968).

---

[2] The jury charge was modified from model civil jury charge No. 5.18, an instruction on liability for the dangerous condition of property owned or controlled by the public entity, governed by *N.J.S.A.* 59:4–2, a different section of the Tort Claims Act. The model charge also incorrectly requires the jury to consider all of the elements of the cause of action in defining the term "dangerous condition," rather than setting forth the statutory definition of dangerous condition, and listing it as a component of the cause of action. We reproduce the pertinent part of the model charge at the end of this opinion.

Reversed and remanded to the Law Division for a new trial and for further proceedings consistent with this opinion.

Appendix

*MODEL CIVIL JURY CHARGE NO. 5.18 ON DANGEROUS CONDITION OF PUBLIC ENTITY (9/80)*

The plaintiff charges that

(here describe condition)

is a dangerous condition of public property and that the dangerous condition was a proximate cause of his/her injuries. A public entity is responsible for injuries proximately caused by a dangerous condition of its property. The phrase "dangerous condition" has a particular meaning. In order for you to find that there was a dangerous condition of public property, you must be satisfied by a fair preponderance of the credible evidence that all of the following things were true at the time of the plaintiff's injury:

First: That the condition was one that created a substantial risk of injury, a risk that was not minor, trivial or insignificant, to a person using the public property with due care, that is, reasonable care for his/her own safety, and in a manner that the public entity ought to have reasonably foreseen or expected people to use the property.

Second: That the condition was one that created a reasonably foreseeable risk of the kind of injury alleged by the plaintiff. It need not be of exactly the very same kind, but it must be injury of the same class, order or type.

Third: The condition was either (a) created by the negligent or wrongful act or omission of an employee or employees of the defendant within the scope of his/her employment or (b) the defendant either had actual or constructive notice of the dangerous condition a sufficient time prior to the injury to have taken measures to repair, remedy or correct it or to provide safeguards or to warn of the condition. The defendant had actual notice of the dangerous condition if you are satisfied it actually knew the

condition existed and knew or should have known of its dangerous character. The defendant had constructive notice of the condition if you are satisfied the condition had existed for such a period of time and was of such obvious nature that the public entity, in the exercise of due and reasonable care, should have discovered the condition and its dangerous character.

Fourth: That the action the defendant took, or its failure to take action, to repair, remedy or correct the condition, or to provide safeguards against it, or to warn of the condition, was palpably unreasonable, it must be more than merely careless or thoughtless or forgetful or inefficient. To be palpably unreasonable, it must be action or inaction that is plainly and obviously without reason or reasonable basis, capricious, arbitrary or outrageous.