946 A.2d 617 (2008)
400 N.J. Super. 189
Robin M. DICKSON, by and through her guardian, Alice DUBERSON, Plaintiffs-Respondents/Cross-Appellants, and
Paul E. Dickson, Jr. and Alice Duberson, individually, Plaintiffs-Respondents,
v.
TOWNSHIP OF HAMILTON, Defendant-Appellant/Cross-Respondent, and
County Of Atlantic and State of New Jersey, jointly, severally, and in the alternative, Defendants.
Docket No. A-0422-07T2.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 2008.
Decided May 15, 2008.
Neil Stackhouse argued the cause for appellant/cross-respondent Township of Hamilton (The Law Offices of Neil Stackhouse, attorneys; Frederick P. Warner, on the brief).
Christopher S. Lipari, Linwood, argued the cause for respondent/cross-appellant Robin Dickson (Christopher S. Lipari, L.L.C., attorneys; Mr. Lipari, on the brief).
Steven C. Harris, Plesantville, attorney for respondent Paul Dickson, joins in the brief of respondent/cross-appellant Robin Dickson.
*619 Before Judges LISA, LIHOTZ and SIMONELLI[1].
The opinion of the court was delivered by
LIHOTZ, J.A.D.
By our leave granted, defendant Hamilton Township (Township) appeals and plaintiff Robin Dickson cross-appeals from the denial of their respective requests for summary judgment in this negligence action. The Township asserts it is immune from suit and plaintiff argues the Township's liability is bottomed on the negligence of its employee. We are asked to examine provisions of the New Jersey Tort Claims Act (Act), N.J.S.A. 59:1-2 to 12-3. Specifically, we address the scope and applicability of weather immunity, pursuant to N.J.S.A. 59:4-7.
Plaintiff, while operating a motor vehicle eastbound on Route 322, hit a patch of black ice. Her vehicle left the roadway, slid fifty feet, and hit a tree. As a result of the impact, plaintiff sustained serious injuries. Plaintiff's complaint against the State of New Jersey (State), Atlantic County, and the Township alleged a dangerous roadway condition caused or contributed to her accident.
Route 322, also known in this area as the Black Horse Pike, is owned, controlled, and maintained by the State. The Township's police department exercises law enforcement responsibilities over that portion of Route 322 where the accident occurred. Because it lacked a connection to the roadway, Atlantic County was dismissed from the litigation.
The State, the Township, and plaintiff requested summary judgment. The motion judge granted the State's motion, citing immunity pursuant to N.J.S.A. 59:4-7, and denied plaintiff's motion concluding sufficient disputed material facts concerning liability precluded summary judgment. The Township's motion was also denied as the motion judge determined the weather alone was not the "true culprit" contributing to the accident. The judge perceived a disputed factual issue existed: whether the Township's actions were a reasonable response to the weather situation presented or whether the Township's failure to repeatedly contact the State and to warn drivers of the hazardous road conditions on Route 322 were "palpably unreasonable" and contributed to the cause of the accident.
Our review examines the propriety of the trial judge's ruling on the immunity issue. We determine that the Township is immune from suit pursuant to N.J.S.A. 59:4-7. We reverse and remand to the Law Division for entry of judgment for the Township.
We accept as true plaintiff's version of the facts gleaned from the pleadings, affidavits, and depositions, giving her the benefit of all inferences favorable to her claim. R. 4:46-2; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536, 666 A.2d 146 (1995). Plaintiff's accident occurred at 5:22 a.m. on February 2, 2003, near mile post 48 on Route 322. Prior to plaintiff's accident, five single motor vehicle mishaps occurred on Route 322, between mile posts 41 and 52. Each accident report notes that ice on the roadway was a contributory cause of the accident. The Township police officers responded to and reported these accidents and submitted accident information to the Township's police dispatcher. The police did not close the roadway or place warning markers to warn motorists of the icy conditions.
*620 Steven Mitchell, the Hamilton Police Department dispatcher who worked that morning, acknowledged he was to notify the State when he learned of conditions on a State roadway that warranted remediation. Mitchell had no specific recollection of the day's events.
The Township police radio recordings from the morning hours prior to plaintiff's accident contained no calls to the State reporting accidents on Route 322. However, the Township's police telephone records show communication to the State regarding road conditions on Route 322 at 2:31 a.m. Additionally, the records contain a second entry at 3:10 a.m. stating an unidentified caller reported "conditions on the Pike" and Mitchell confirmed the State "had been called."
According to the State's records, it opened the snow room at 2:20 a.m. and received a telephone call from the Township by 2:30 a.m. The log notation states: "icing on Rt. 322 @ MP 39-40." Further, Charles W. Kingsland, the executive assistant of South Region Operations in the State Department of Transportation (DOT), testified a work crew was dispatched after receiving the initial call from the Township. Kingsland believed the crew was assigned to address roadway conditions below mile post 48. He acknowledged the DOT responded to specific calls and no storm emergency was declared.
Daniel Voltaggio, the State crew chief responsible for mile posts 41 to 50 of Route 322 did not recall being assigned by Kingsland to address an icy roadway on February 2, 2003. However, Voltaggio did learn of ice on the roadway when a crew member, who was driving in the area, called him.
At 3:30 a.m., Patrol Sergeant Robert B. Richards, who supervised the day-to-day operations of the Hamilton Township Police Department patrol squad, investigated an accident occurring at mile post 48.8 on Route 322. He recalled seeing State work trucks salting the roadway at the scene of this accident. Richards explained that although the dispatcher "should call" the DOT following every accident, he would not because repeated calls relaying the same information would result in "the same response." And "he [the dispatcher] may get a negative response if he continues to call and he doesn't want to have a negative response."
A meteorologist's certification summarized the weather in Mays Landing on February 2, 2003 as: "Ground surfaces were damp from a recent rain. Even though the air temperature was just above freezing, the ground in spots could have been several degrees colder. As a result, there may have been an isolated patch or two of black ice from left over water refreezing."
The Township asserts immunity from liability as it neither owned nor controlled the highway in question. The icy conditions, which contributed to plaintiff's accident were purely weather related and the Township took no action to exacerbate these conditions, preserving its immunity from suit.
In denying summary judgment, the motion judge did not consider climatology immunity, presumably because at oral argument it was suggested that the protection solely exempted the roadway owner, in this case, the State. The motion judge framed the inquiry as whether the Township's response to "an emergency," when it learned of ice patches on Route 322, was "palpably unreasonable," exposing it to liability, which posed a factual determination for a jury. Wooley v. Bd. of Chosen Freeholders, 218 N.J.Super. 56, 62, 526 A.2d 1116 (App.Div.1987). Our review is de *621 novo as the trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to deference. Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
"[T]he public policy of this State is that public entities shall be liable for their negligence only as set forth in the Tort Claims Act." Pico v. State, 116 N.J. 55, 59, 560 A.2d 1193 (1989). "[T]he dominant theme of the Act is immunity, with liability as the exception." Massachi v. AHL Servs., Inc., 396 N.J.Super. 486, 495, 935 A.2d 769 (App.Div.2007); Fluehr v. City of Cape May, 159 N.J. 532, 539, 732 A.2d 1035 (1999). "As the Comment to N.J.S.A. 59:2-1 . . . states, courts should employ an analysis that first asks `whether an immunity applies and if not, should liability attach.'" Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 128, 619 A.2d 575 (1993) (quoting Attorney General's Task Force Report on Sovereign Immunity, comment to N.J.S.A. 59:2-1 (1972)); Pico, supra, 116 N.J. at 59, 560 A.2d 1193; Saldana v. DiMedio, 275 N.J.Super. 488, 496, 646 A.2d 522 (App.Div. 1994). When both liability and immunity exist, immunity prevails. N.J.S.A. 59:2-1; Tice v. Cramer, 133 N.J. 347, 356, 627 A.2d 1090 (1993); Macaluso v. Knowles, 341 N.J.Super. 112, 117, 775 A.2d 108 (App.Div.2001).
A public entity's liability may result when injury occurs from a dangerous condition existing on public property, which includes public roadways. N.J.S.A. 59:4-2. The statute states:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
[N.J.S.A. 59:4-2.]
We concur with the Township's position that the motion judge mistakenly considered this section of the Act when examining the Township's possible liability. Chapter 4 of the Act contains a definitional section in addition to that of N.J.S.A. 59:1-3. N.J.S.A. 59:4-1 includes these definitions applicable to the chapter:
a. "Dangerous condition" means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.
b. "Protect against" includes repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition.
c. "Public property" means real or personal property owned or controlled by the public entity, but does not include easements, encroachments and other property that are located on the property *622 of the public entity but are not owned or controlled by the public entity.
[N.J.S.A. 59:4-1.]
Thus, "[t]he `dangerous condition[,]' which is the predicate for liability of a public entity under N.J.S.A. 59:4-2[,] must be a dangerous condition inherent in property `owned or controlled' by the public entity." Weiser v. County of Ocean, 326 N.J.Super. 194, 199-200, 740 A.2d 1117 (App.Div.1999); see also Ball v. New Jersey Bell Tel. Co., 207 N.J.Super. 100, 107-08, 504 A.2d 29 (App.Div.), certif. denied, 104 N.J. 383, 517 A.2d 391 (1986); McGowan v. Eatontown, 151 N.J.Super. 440, 446, 376 A.2d 1327 (App.Div.1977).
The State's ownership of Route 322 is unrefuted. However, could the Township be attributed with control over that stretch of highway within its territorial boundaries? The answer simply is no. The Township's protective police patrol of the highway does not establish its "control" of the State road. Brothers v. Highlands, 178 N.J.Super. 146, 150, 428 A.2d 528 (App.Div.1981). "Nothing in the legislative history [of the Act] suggests that a public entity is liable for injuries sustained by virtue of a dangerous condition existing on the property of another." Ball, supra, 207 N.J.Super. at 107-08, 504 A.2d 29. Absent "possessory control consistent with property law," the Township's actions do not evidence a basis for liability under this section of the Act. Posey v. Bordentown Sewerage Auth., 171 N.J. 172, 183, 793 A.2d 607 (2002).
Plaintiff in her merits brief concedes the Township's liability is not established under this section of the Act. Similarly, the examination of whether actions taken by the entity "to protect against the condition or the failure to take such action" were "palpably unreasonable" applies only to property owned or controlled by the public entity. N.J.S.A. 59:4-2. Because the Township neither owned nor controlled Route 322, tort exposure pursuant to N.J.S.A. 59:4-2 cannot arise.
Although the Township generally lacks liability regarding dangerous conditions existing on State property, we specifically examine two bases of negligence liability asserted by plaintiff in her cross-appeal. First, whether for tort purposes, the Township's police dispatcher was negligent in notifying the State of the dangerous road condition, invoking N.J.S.A. 59:2-2(a) and N.J.S.A. 59:3-1(a). Second, whether the Township, nonetheless, had a duty to warn motorists or take over traffic control when its police officers learned of multiple accidents resulting from ice on Route 322 implicating liability pursuant to N.J.S.A. 59:4-4.
To support her position, plaintiff points out that the Act distinguishes the liability of a public employee from the liability of a public entity. As we noted, a public entity is immune unless specifically liable under the Act. On the other hand, "a public employee is liable for injury caused by [his] act or omission," except as provided by the Act. N.J.S.A. 59:3-1(a). The Act's treatment of public employees and public entities "`reflects longstanding legal principles in the State and explains in large part the apparent anomaly that public employees may be exposed to greater liability than their public employers.'" Saldana, supra, 275 N.J.Super. at 496, 646 A.2d 522 (quoting Chatman v. Hall, 128 N.J. 394, 402-04, 608 A.2d 263 (1992)). So too, a public entity may be liable for injury caused by its employees' actions or failure to act within the scope of his or her employment. N.J.S.A. 59:2-2(a).
Plaintiff primarily argues that despite several accidents on Route 322, dispatcher Mitchell only called the DOT once at 2:30 a.m. The DOT responded to that call and *623 sent a work crew to mile post 39. Plaintiff reasons that had Mitchell called after every accident, the State would have responded with a work crew responsible to address the icy conditions on the stretch of highway proximate to her accident. Thus, she concludes her accident was caused by Mitchell's failure to make repeated calls, or the negligent execution of ministerial tasks for which immunity does not attach. See N.J.S.A. 59:2-3(d); Massachi, supra, 396 N.J.Super. at 507-508, 935 A.2d 769; Suarez v. Dosky, 171 N.J.Super. 1, 10, 407 A.2d 1237 (App.Div.1979), certif. denied, 82 N.J. 300, 412 A.2d 806 (1980).
Notwithstanding Mitchell's attributed actions or omissions, the Township insists it remains immune pursuant to N.J.S.A. 59:4-7, which states: "Neither a public entity nor a public employee is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions." See Horan v. State, 212 N.J.Super. 132, 136, 514 A.2d 78 ("when weather alone is the true culprit, government is immune").
It is unchallenged that the Township took no action to increase the danger of the ice in its natural condition. Pico, supra, 116 N.J. at 61, 560 A.2d 1193. But "[i]f the weather combined with another cause or other causes actionable under the Tort Claims Act . . . then [the] specifically conferred climatological immunity would not operate as a bar because of the express statutory use of the word `solely'" in that statutory section. McGowan, supra, 151 N.J.Super. at 447, 376 A.2d 1327; Meta v. Twp. of Cherry Hill, 152 N.J.Super. 228, 333-34, 377 A.2d 934 (App.Div.), certif. denied, 75 N.J. 587, 384 A.2d 818 (1977). Thus, we examine whether the transient icy condition of Route 322 was the sole cause of plaintiff's accident such that the Township is immune or whether Mitchell's omission justifies liability.
The DOT telephone log reports icy patches on various roadways throughout Atlantic County. The State opened its "snow room" and dispatched trucks to treat various State roadways for weather inflicted conditions, including Route 322. Also, Voltaggio was informed of the ice patches by his employee who was on the road. Sergeant Richards related Route 322 at mile post 48.8 included "icy spots"; "there were certain areas . . . of the road that were not icy and certain areas that were icy." Finally, Richards recalled viewing a salt truck between mile posts 48 to 49.
We reject plaintiff's conclusion that since the Township knew of the intermittent icy patches on Route 322, it had a duty to notify the State following each and every accident. The Township notified the State of the icy roadway as evidenced by the State's recorded call at 2:30 a.m. Moreover, the existence of salt trucks on Route 322 in the vicinity immediately prior to plaintiff's accident and the call from Voltaggio's crew member further evidence the State's knowledge of the intermittent ice and its response thereto.
Although plaintiff contests the adequacy of the Township's response, we are satisfied that the dispatcher's failure to make repeated calls to the State, even if labeled "ministerial," does not result in the Township's liability. Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 412, 541 A.2d 1029 (1988); Pico, supra, 116 N.J. at 62, 560 A.2d 1193. Additionally, the Township's actual notice that some portions of State highway 322 were icy does not eradicate its immunity and impose liability. Robinson v. City of Jersey City, 284 N.J.Super. 596, 600, 666 A.2d 169 (App. Div.1995).
The Township had no responsibility for maintenance of Route 322 and its employees *624 took no independent steps that morning to address the icy spots. We distinguish the facts submitted from those in cases where additional man-made conditions, well-known to the municipality, created the water that froze into ice. See Robinson, supra, 284 N.J.Super. at 596, 666 A.2d 169 (broken water pipe spilled water onto roadway and froze creating a 355 foot icy patch); Meta, supra, 152 N.J.Super. at 228, 377 A.2d 934 (a ditch alongside the road that was filled with silt and vegetation caused water to overflow onto highway and the water then froze); McGowan, supra, 151 N.J.Super. at 445, 376 A.2d 1327 (a restaurant's roadside driveway caused runoff of large quantities of water onto the highway that froze in cold temperatures). In these cases, the municipality's prior knowledge of an unremediated dangerous condition at a specific location along with the weather conditions combined to cause the plaintiff's injury. Unlike this case, weather was not the sole cause of the dangerous condition, resulting in a loss of immunity.
We also need to dispel the conception that the Township's lack of ownership of the highway eliminated the immunity provided by N.J.S.A. 59:4-7. Plaintiff maintains "the claim of immunity for weather conditions is limited to the entity that owns the property." We recognize reported cases, which conclude weather was the sole cause of the plaintiff's injury, focus on the immunity of the roadway owner. Pico, supra, 116 N.J. at 60, 560 A.2d 1193; Horan, supra, 212 N.J.Super. at 135, 514 A.2d 78. And, the cases determining possible municipal liability for a dangerous condition on a state highway concluded that causes, in addition to weather, created the dangerous condition over which the municipality had a duty to act. See McGowan, supra, 151 N.J.Super. at 447, 376 A.2d 1327; Meta, supra, 152 N.J.Super. at 228, 377 A.2d 934. It is illogical to impose liability upon a municipality for a weather induced dangerous condition existing on a state roadway. We conclude the scope of climatological immunity provided by N.J.S.A. 59:4-7, extends to public entities generally, not the property owner specifically.
When interpreting a statute, our paramount goal is to determine the Legislature's intent. American Fire and Cas. Co. v. New Jersey Div. of Taxation, 189 N.J. 65, 79, 912 A.2d 126 (2006). To do so, we first examine the plain language of the statute and ascribe to the words their ordinary meaning. DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005); Mun. Council v. James, 183 N.J. 361, 370-71, 873 A.2d 544 (2005).
In its grant of immunity, N.J.S.A. 57:4-7 does not contain the "public property" limitation of N.J.S.A. 59:4-1(c), initially suggesting the application of the weather immunity provision would not be circumscribed solely to the owner of the public property. Obviously, the Legislature knew well its ability to add the limitation to achieve that result as it had done in N.J.S.A. 59:4-2, 59:4-6, 59:4-8, and portions of 59:4-10. Tice, supra, 133 N.J. at 366, 627 A.2d 1090. Instead, the Legislature deliberately chose a broad framing of the statutory immunity provision. This illustrates that "[p]ublic entities are immune from suit for weather-caused accidents that occur on streets or highways, because the Legislature realized that `government should not have the duty to do everything that might be done.'" Bligen, supra, 131 N.J. at 130, 619 A.2d 575 (quoting N.J.S.A. 59:1-2).
Our conclusion remains consistent with the broad common-law governmental immunity for routine, anticipated dangerous conditions resulting from snow and ice. See Pico, supra, 116 N.J. at 61-62, 560 *625 A.2d 1193; Rochinsky, supra, 110 N.J. at 412-13, 541 A.2d 1029; see also Miehl v. Darpino, 53 N.J. 49, 247 A.2d 878 (1968) (public entities immune from liability for negligent snow removal). In Rochinsky, supra, the Court concluded the absolute immunity for snow-removal activities as described in Miehl remained unaltered by enactment of the Act. 110 N.J. at 414, 541 A.2d 1029. By analogy, a dangerous icy condition caused solely by weather cannot give rise to the tort liability of any public entity.
Here, nothing more than natural weather during this winter morning, i.e., freezing early morning condensation, created sporadic dangerous conditions on a state highway. The weather-created intermittent icy patches, along with the manner in which plaintiff used the highway, resulted in her accident. Horan, supra, 212 N.J.Super. at 134, 514 A.2d 78. We conclude weather immunity shields the Township from suit.
Finally, we address plaintiff's assertion of liability for failure to warn, pursuant to N.J.S.A. 59:4-4. Plaintiff states the Township's obligation to patrol this stretch of Route 322 resulted in a duty to warn drivers or close the hazardous highway and redirect traffic once the ice patches were discovered. We cannot agree.
The statute provides:
Subject to section 59:4-2 of this act, a public entity shall be liable for injury proximately caused by its failure to provide emergency signals, signs, markings or other devices if such devices were necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.
[N.J.S.A. 59:4-4.]
We have rejected a similar claim for liability against the state and a municipality for failure to warn the traveling public of a frozen bridge surface that was adjacent to the roadway. Horan, supra, 212 N.J.Super. at 134, 514 A.2d 78. In Horan, we concluded that if plaintiff's contention, that the injury was caused by the failure to warn of the dangerous weather condition, "was thought to be sound, the weather immunity statute would, in effect, be written out of the books." Ibid.; Pico, supra, 116 N.J. at 60-61, 560 A.2d 1193. See also Manca v. Hopatcong, 157 N.J.Super. 67, 73, 384 A.2d 543 (App.Div.) (court rejected plaintiff's assertion of municipal liability regarding an accident on a state road due to snow removal, which narrowed road width because the municipality had notice of a prior accident), certif. denied, 77 N.J. 480, 391 A.2d 495 (1978).
The circumstances described do not constitute a "trap" to a person using a street or highway with due care in the early morning hours of February. Nor do they present a road condition so extraordinary, posing such an unusual risk of injury not readily observable by a careful observant motorist. Bergen v. Koppenal, 52 N.J. 478, 480, 246 A.2d 442 (1968).
We conclude the Township may not be charged with the damages arising from this injury, which was caused solely from weather conditions. The Law Division order to the contrary must be reversed.
Reversed and remanded for entry of summary judgment in favor of the Township.
NOTES
[1] Judge Simonelli did not participate in oral argument. However, with the consent of counsel she has joined in this opinion. R. 2:13-2(b).