**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0856-18T1

L.T., individually and as
Guardian Ad Litem of D.T.,

     Plaintiffs-Appellants,

v.

TOWNSHIP OF OCEAN
BOARD OF EDUCATION,
OCEAN TOWNSHIP HIGH
SCHOOL, TOWNSHIP OF
OCEAN, and TOWNSHIP OF
OCEAN POLICE DEPARTMENT,

     Defendants-Respondents.

_____

Submitted December 3, 2019 – Decided January 28, 2020

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1284-15.

Before Judges Fisher and Gilson.

Nelson, Fromer, Crocco & Jordan, attorneys for appellants (Bruce Fromer, of counsel and on the brief; Joseph A. Burke, on the brief).

Schwartz & Posnock, attorneys for respondents, Township of Ocean and Township of Ocean Police Department (David A. Schwartz, of counsel and on the brief).

PER CURIAM

While walking to a snack bar during a high school football game, D.T. (David), who was then fourteen years old, was tackled by another teenager and injured.[1] David's mother, on behalf of her son and herself, sued the town and its police department alleging negligence under the Tort Claims Act (TCA), N.J.S.A. 59:5-1 to -12. Plaintiffs appeal from an order granting summary judgment to the Township and the Police Department. We affirm because plaintiffs failed to establish facts showing proximate causation.

I.

We take the facts from the summary judgment record, viewing them in the light most favorable to plaintiffs, the non-moving parties. In September 2013, David, who was in the eighth grade, attended a high school football game as a spectator.

David testified at his deposition that he was watching the football game from the bleachers when he decided to meet some friends and go to the snack

---

[1] To protect privacy interests, we use initials and fictious names because one of the plaintiffs and one of the defendants were minors at the time of the incident.

bar. As he was walking on a blacktop walkway to the snack bar, O.R. (Oran) tackled him from behind. David fell forward and broke his arm in several places.

David explained that he knew Oran, but he had not been with Oran at the game and he had not seen him before Oran tackled him from behind. David also explained that approximately seventy people were in the area near the bleachers, including a fair number of children playing football in the grass next to the walkway.

Two of David's friends, M.N. (Max) and M.I. (Marvin), witnessed the incident and were deposed. Max testified that he was walking approximately ten yards behind David as David walked with a girl. As David was walking towards the snack bar, Oran ran up from the other direction, asked Max "[w]here's [David]," then "took off and hit [David]." Max described the hit as a "full speed blind-side tackle."

Marvin testified that he was walking with David and a girl towards the snack bar, when Oran called out David's name, and ran up and hit his body against David's body. According to Marvin, David then fell over and landed on his arm.

The only other witness to the incident who testified was Oran. His account differed from the accounts provided by David, Max, and Marvin. Oran testified

at his deposition that he was walking behind the bleachers when someone hit him in the back of his head. Oran then spun around and pushed the person, who turned out to be David. David fell and got up complaining of an injury to his arm.

David, Max, Marvin, and Oran all testified that they were not engaged in roughhousing before the incident. As already noted, David testified that just before the incident he had been in the bleachers, which he left to visit the snack bar. Both Max and Marvin testified that neither of them had been involved with, nor witnessed any roughhousing. Oran also testified that he had no recollection of engaging in roughhousing.

Two other witnesses observed a group of teenagers roughhousing before David was injured. Both of those witnesses, however, testified at their depositions that they did not actually see the incident during which David was injured.

The first witness was D.B. (Dan), an adult friend of David's father, who also knew David. Dan testified that as he was watching the game from the bleachers, he would periodically turn around to look behind the bleachers where a food truck was giving off carbon monoxide exhaust. When turned around, Dan saw a group of teenagers behind the bleachers. One of the teenagers, who

4

Dan did not know, was pushing and bear hugging others in the group. Dan went on to testify that while he saw David "with" that teenager before the game started, he never saw David roughhousing.

According to Dan, in the fourth quarter of the game he went to the bathroom. On his way back, he saw two police officers standing by the fence near the field. He told the officers: "[y]ou better go check because they [are] roughhousing back there and it looks like it's getting out of hand." Dan estimated that he made that statement to the police approximately fifteen minutes before a "kid" came and told him that David had been hurt.

The second witness who saw roughhousing was D.T. (Deann). Deann is the mother of five boys and one of her sons was a running back for the football team. Another of her sons, a friend of David, was also at the game. Deann watched the game from the bleachers. After half-time, she went to get a snack. As she was walking towards the snack bar, she saw a group of boys without their shirts jumping around. One of the boys bumped into her and she told the boys to "chill out, relax."

As Deann walked back to the bleachers, she said to a group of police officers: "[t]here's a group of boys back there. They're not doing anything to harm anybody else, but they're probably going to harm someone or themselves

A-0856-18T1

because they're back there jumping all over the place." According to Deann, one of the officers backed up, looked to his left, and then continued a conversation he was having with another officer.

Deann testified that she did not see David get injured; rather, she heard about it from a friend. She explained that she was told of David's injury approximately twenty minutes to half an hour after she spoke to the police officers. She also explained that she knew both David and Oran but did not know any of the boys who had been jumping around. In that regard, Deann testified that she did not know if the boys she saw roughhousing had anything to do with the incident involving David.

Security for the football game was coordinated by the high school's athletic director and the Township's head of security for the Board of Education. The head of security testified that on the night of David's injury, five police officers were at the game. During discovery, only four of those officers were identified and deposed. Those officers testified that they were not alerted to any roughhousing behind the bleachers during the game. They also testified that if they had been alerted to or observed the roughhousing, they would have responded.

A-0856-18T1

In April 2015, plaintiffs sued the Ocean Township Board of Education, Ocean Township High School, Ocean Township, and the Ocean Township Police Department. The High School and the Board of Education filed a third-party complaint against Oran, as did the Township and the Police Department. Thereafter, plaintiffs named Oran as a direct defendant.

After engaging in discovery, the Township, the Police Department, the Board of Education, and the High School moved for summary judgment and to strike plaintiff's expert report. After hearing oral argument, the trial court granted both motions and explained the reasons on the record. The court then memorialized its decision in two orders entered on September 13, 2018. Specifically, the court ruled that plaintiffs' expert report was inadmissible as a net opinion because it failed to identify the standard for the security that needed to be provided at a high school football game. Independently, the court granted the public entity defendants summary judgment, finding that the police had no duty and there was no evidence establishing causation.

Plaintiffs appeals only from the order granting summary judgment to the Police Department and the Township. Initially, that appeal was dismissed as interlocutory, but thereafter plaintiffs dismissed with prejudice their claims against Oran. The appeal was then reinstated.

A-0856-18T1

## II.

As noted, plaintiffs are appealing only the order granting summary judgment in favor of the Police Department and the Township. Plaintiffs argue that the trial court erred because they established the elements for negligence and there were genuine issues of disputed material facts. Plaintiffs also contend that the trial court erred in striking their liability expert report as a net opinion. We need not reach the net opinion issue because we find that the material undisputed facts established that plaintiffs could not prove causation that would make the police responsible for the injuries resulting from an intentional or reckless act by a third party.

We review a trial court's decision to grant summary judgment de novo, using the same standard that governed the trial court's ruling. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). Under that standard, summary judgment will be granted if, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Ibid. (quoting Templo Fuente, 224 N.J. at 199); accord R. 4:46-2(c).

A-0856-18T1

"An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c). Furthermore, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

The TCA, which governs negligence claims against public entities, provides "a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. Cty. of Essex, 209 N.J. 51, 65 (2012) (quoting Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002)). "When both liability and immunity exist, immunity prevails." Dickson v. Twp. of Hamilton, 400 N.J. Super. 189, 195 (App. Div. 2008) (citations omitted).

Neither a public entity nor a public employee is liable for "failure to provide police protection . . . or . . . failure to provide sufficient police protection." N.J.S.A. 59:5-4. Further, the TCA states "[a] public employee is

not liable for an injury resulting from the exercise of judgment or discretion vested in him [or her]." N.J.S.A. 59:3-2(a); see also N.J.S.A. 59:2-3(a) (the parallel provision governing public entities using the same language). The TCA, however, does not immunize public employees for negligence in carrying out ministerial functions. N.J.S.A. 59:3-2(d); see also N.J.S.A. 59:2-3(d) (the parallel provision governing public entities using the same language).

Accordingly, the TCA does not immunize police officers for negligence in performing ministerial duties. S.P. v. Newark Police Dep't., 428 N.J. Super. 210, 230-31 (App. Div. 2012) (citations omitted); Suarez v. Dosky, 171 N.J. Super. 1, 9-10 (App. Div. 1979) (citation omitted). A "discretionary act . . . calls for the exercise of personal deliberations and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." S.P., 428 N.J. Super. at 230 (quoting Kolitch v. Lindedahl, 100 N.J. 485, 495 (1985)). In contrast, "a ministerial act is 'one which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his [or her] own judgment upon the propriety of the act being done.'" Id. at 231 (quoting Morey v. Palmer, 232 N.J. Super. 144, 151 (App. Div. 1989)). The

public entity has the burden "to establish whether discretion was exercised." Ibid. (citing Kolitch, 100 N.J. at 497).

If no immunity under the TCA applies, plaintiffs must establish the four elements of negligence. See Henebema v. S. Jersey Transp. Auth., 430 N.J. Super. 485, 503 (App. Div. 2013) (holding that under the TCA, liability for ministerial functions is predicated on application of "ordinary negligence principles"). Those elements are that: (1) defendants owed a duty of care; (2) defendants breached that duty; (3) the breach was a proximate cause of the injury; and (4) plaintiff sustained actual damages. Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008)).

Plaintiffs' theory is that the police had a duty to investigate the reported roughhousing and, had they investigated, Oran would not have tackled and injured David. That theory, however, is not supported by the material undisputed facts. In that regard, the facts do not support a finding of causation.

Initially, we note that the imposition of a duty here is questionable. When assessing whether a duty exists, courts consider "the relationship of the parties," the foreseeability and nature of the risk of harm, "the opportunity and ability to exercise care, and the public interest." J.H. v. R&M Tagliareni, LLC, 239 N.J.

11

198, 239 (Rabner, C.J., dissenting) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)).

This case is governed by the TCA and not the common law. Thus, any duty must be found under the TCA. The TCA limits the duty of police to breaches involving ministerial acts. The facts developed during discovery do not clearly establish that the police were involved in ministerial acts while they were monitoring the football game. We need not, however, decide that issue because the facts clearly establish that there was no causation.

We recognize that causation is usually a question for the jury. L.E. v. Plainfield Pub. Sch. Dist., 456 N.J. Super. 336, 350 (App. Div. 2018) (citing Titus v. Lindberg, 49 N.J. 66, 76 (1967)). Nevertheless, a reasonable jury could not conclude that the failure to act by the police proximately caused David's injury. See Vega by Muniz v. Piedilato, 154 N.J. 496, 509 (1998) (finding summary judgment appropriate where "no reasonable jury" could find proximate cause).

The testimony given by all four witnesses to the incident established that the incident arose out of a one-on-one incident, during which Oran tackled or pushed David. David testified that he had come from the bleachers and was simply walking along the pathway towards the snack bar when Oran tackled him

from behind. Max and Marvin both corroborate that testimony. Oran testified that he was walking when someone smacked him in the back of his head and he turned and pushed that person, who turned out to be David. A jury could not reasonably conclude that either of those scenarios arose out of roughhousing that had been reported to the police fifteen minutes to half an hour before David was knocked to the ground. No testimony described the incident as arising out of ongoing roughhousing. Instead, the incident was isolated and unforeseeable.

Furthermore, the incident was described as an intentional or reckless act. Whether Oran intended to injure David is not clear, but it is undisputed that Oran intended to tackle or push David. Those material undisputed facts would not allow a reasonable jury to conclude that the police's failure to investigate the roughhousing had any causal connection to the injury suffered by David. In short, no evidence linked the roughhousing to David's injury.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0856-18T1